MIDDLESEX COMPANY *vs.* DENNIS McCUE.

Middlesex.   March 29, 1889. — May 6, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Nuisance — Surface Drainage — Cultivation of Land.*

The owner of land upon the slope of a hill running down to a mill-pond may culti-
vate and fertilize it in the ordinary way for garden purposes without becoming
liable to the owner of the pond, which is encroached upon so as to diminish
the water power by the large amount of solid matter thereby constantly car-
ried into the pond by surface drainage.

BILL IN EQUITY to restrain the defendant from filling the
plaintiff's mill-pond, and to compel him to remove material
already deposited in it.   Hearing upon the pleadings and a
master's report, before *Holmes,* J., who reserved the case for the
consideration of the full court, in substance as follows.

The master's report contained the following facts.   The plain-
tiff, a mill corporation, was the owner of the mill-pond in
question, which was raised by its dam, and of the land under
the pond, and for thirty years and more had constantly used
the water power thus created for manufacturing purposes.   The
defendant was the owner of land upon the side of a hill slop-
ing down to the pond as far as the land of the plaintiff.   The
defendant had annually used and cultivated his land, in the
ordinary way, to within a short distance from the plaintiff's
land, for the purpose of raising garden vegetables, and had
brought thereon manure and ashes, which he had dug and
spaded into the soil.   The defendant had erected neither a
fence nor a wall to prevent the filling of the plaintiff's pond,
or to prevent the raising of his own land, which the plaintiff
had the right to flow, or for the purpose of banking against
further flowage.

The plaintiff contended that the defendant, by cultivating the
land, had changed the character of the soil, had caused it to
wash into its mill-pond, and that the land could not be legally
so used if it interfered with the plaintiff's rights of flowage,
and caused the filling up of its mill-pond.

The master found that, although in fact the cultivation of the land did cause a raising of the land near the shore of the plaintiff's pond, and a filling up of the pond, it was such a use of the land as might be legally made; and ruled that the defendant might, as he had done, cultivate his land, and apply ashes and other fertilizers in the ordinary course of husbandry.

*B. F. Butler & P. Webster*, for the plaintiff.

*C. Cowley*, for the defendant.

HOLMES, J.    This is a bill brought to restrain the defendant from filling up the plaintiff's mill-pond.   The master reports that the defendant's land is on the slope of a hill running down to the pond, and that the only acts of the defendant tending to fill the pond have been those of cultivating and manuring his own soil in the ordinary way, for the purpose of raising garden vegetables.   The question is whether the defendant has a right to do these acts notwithstanding their effects upon the plaintiff's land and water rights.

The respective rights and liabilities of adjoining landowners cannot be determined in advance by a mathematical line or a general formula, certainly not by the simple test of whether the obvious and necessary consequence of a given act by one is to damage the other.   The fact that the damage is foreseen, or even intended, is not decisive apart from statute.   Some damage a man must put up with, however plainly his neighbor foresees it before bringing it to pass.   *Rideout* v. *Knox*, 148 Mass. 368.   Liability depends upon the nature of the act, and the kind and degree of harm done, considered in the light of expediency and usage.   For certain kinds there is no liability, no matter what the extent of the harm.   A man may lose half the value of his house by the obstruction of his view, and yet be without remedy.   In other cases his rights depend upon the degree of the damage, or rather of its cause.   He must endure a certain amount of noise, smells, shaking, percolation, surface drainage, and so forth.   If the amount is greater, he may be able to stop it, and to recover compensation.   As in other matters of degree, a case which is near the line might be sent to a jury to determine what is reasonable.   In a clear case it is the duty of the court to rule upon the parties' rights.

The present case presents one of these questions of degree. If the plaintiff were complaining of offensive drainage from a vault, it would be entitled to recover upon proof of the fact. *Ball* v. *Nye*, 99 Mass. 582.   If it complained that the surface drainage was made offensive by the nature of the substance spread by the defendant upon his land, the case would be nearer the line, and the right to recover possibly might depend upon further circumstances, such as whether the substances were usual and reasonable fertilizers, or refuse, etc.   See *Brown* v. *Illius*, 27 Conn. 84, and 25 Conn. 583.   In this case it complains, not that the substances brought down are offensive, but that the defendant causes any solid substance to be brought down at all. Practically it would forbid the defendant to dig his land, at least without putting up a guard, since the surface drainage necessarily carries more of the soil along with it if the earth is made friable by digging.   This would cut down the defendant's right of surface drainage to a very small matter indeed.   We are of opinion that a man has a right to cultivate his land in the usual and reasonable way, as well upon a hill as in the plain, and that damage to the lower proprietor of the kind complained of is something that he must protect himself against as best he may. The plaintiff says that a wall would stop the trouble.   If so, it can build one upon its own land.   *Dickinson* v. *Worcester*, 7 Allen, 19.   *Flagg* v. *Worcester*, 13 Gray, 601, 607.   *Parks* v. *Newburyport*, 10 Gray, 28.   *Cassidy* v. *Old Colony Railroad*, 141 Mass. 174.

*Bill dismissed.*