GEORGE T. ABREY ET AL. v. WILLIAM LIVINGSTONE, JR., ET AL., COMMISSIONERS OF PARKS AND BOULEVARDS.

*Municipal corporations—Parks—Highways—Approach to Belle Isle bridge.*

The commissioners of parks and boulevards of the city of Detroit have the right, under the statute authorizing the purchase of sufficient real estate on the main-land for suitable approaches to the bridge leading to Belle Isle Park, to inclose the portions of said land outside of the sidewalks on either side of the driveway of said approach, which have never been used as a part of said driveway, and devote them to any purpose for. the accommodation of the public in connection with the park, for ornamentation or otherwise, and the owners of the adjacent lands have no right to their use as a means of ingress to and egress from their lands.

Appeal from Wayne. (Reilly, J.) Argued February 17, 1893. Decided March 10, 1893.

Bill to enjoin defendants from erecting and maintaining fences or walls on the outer sides of the parcels adjoining the approach to the bridge leading to Belle Isle Park. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor*, for complainants.

*John J. Speed* (*F. H. Canfield*, of counsel), for defendants.

LONG, J. By Act No. 391, Local Acts of 1879, the city of Detroit was authorized to establish and regulate a park. Section 1 of the act gave the common council of the city power to purchase the island in the Detroit river known as "Belle Isle," and to improve and use the same as a public park. Section 2 conferred the power upon the council, so far as the Legislature had a right to confer it, to erect and maintain a bridge over the American channel between the island and the main-land, and also the power to purchase and acquire sufficient real estate on said main-land, either within or without the limits of the city, for suitable approaches to such bridge from the main-land.

The island was subsequently purchased by the city for a park, and the American channel of the river bridged, an act of Congress having been obtained permitting it. The full text of that act is set out in *Commissioners, etc., v. Common Council of Detroit*, 80 Mich. 663. The island has been beautified, and is used as a park, and the bridge leading to it fully completed. The end of the bridge upon the main-land is within the city limits, and at a point directly opposite the southerly end of the boulevard as it enters Jefferson avenue. This boulevard extends northward from Jefferson avenue about four miles, thence westward for several miles, and thence southward near to the Detroit river; thus inclosing the outer limits of the city upon three

sides. It is 150 feet wide. This boulevard or broad street was authorized to be built and maintained by the city by Act No. 374, Local Acts of 1879, and acts supplemental thereto. The city acquired the right of way for this boulevard largely by condemnation proceedings, as it was authorized to do under the act. The boulevard is now nearly completed.

.Under the power granted to it by Act No. 391, Local Acts of 1879, the common council, on January 11, 1886, purchased from Edward Kanter and wife a strip of land for an approach to the bridge from the main-land. The strip is 150 feet wide, and extends from Jefferson avenue to the river. It is described in the deed from Kanter and wife as—

"One hundred and fifty feet front on the south side of Jefferson avenue, running back to the channel bank of the Detroit river, east and west lines being parallel, and being a direct extension of the boulevard or Frontenac avenue, so called, and being a part of Front concession of private claim No. 678, formerly in the township of Hamtramck."

The bridge and this approach were completed in the fall of 1889, and came into general use by the public. At the time of the purchase of this approach the natural surface of the ground descended towards the water's edge, so that, in the construction of the driveway leading over it to the bridge, it was filled up to a level with the bridge, some 15 feet above the natural surface. The entire width of the bridge is 44 feet. The driveway over it is 28 feet wide. The driveway over the approach to the bridge is the same width as the bridge, but increases in width, as it approaches Jefferson avenue, to about 100 feet. This space has been used since the fall of 1889 as a · driveway to the bridge and for a sidewalk for pedestrians upon either side, thus leaving a strip on the outer side of each walk about 25 feet in width at Jefferson avenue and 50

feet wide at the channel bank of the river.    These strips have not been filled in, but slope to the river.

The complainants filed their bill in the Wayne circuit court in chancery, setting up that they are the owners of the lands adjacent to these strips, and have a frontage thereon.    They procured their titles to these lands after Kanter and wife deeded the approach to the bridge to the city, and now claim that such approach is in its entire width a public street, through which they have the right of ingress to and egress from their lands.    It is claimed by the defendants that it is their intention to ornament these strips outside of the walks, and, to prevent encroachments thereon, to erect necessary fences or walls along the outer sides of the same.    The complainants seek by their bill to enjoin the defendants from erecting and maintaining these fences or walls.    Defendants claim that these pieces of land are not a part of the public highway, but that the city may devote them to the purposes of a park, and shut off the approaches from either side.    Complainants' bill was dismissed in the court below, and they appeal.

It is contended by counsel for complainants that these parcels of land have always been regarded throughout their entire width by the common council and the board of public works as a street; that the strip of land from Jefferson avenue to the river was purchased for the purpose, and no other, of an approach to the bridge and a continuation or extension of the boulevard to the bridge.

This piece of land was purchased by the city under the power granted by the above-named act.    This act does not define the extent of the land to be purchased, but does provide for the "purchase of sufficient real estate on the main-land for suitable approaches to the bridge."    The general purpose of the act was to enable the city to acquire the island for a public park, and to provide the

means of reaching it, and not to extend the boulevard. The boulevard was opened and constructed under other acts; and by the action of the council the bridge was located so that the north end should be in line with the boulevard. The city had no power to condemn the land for such approaches, but was empowered to acquire it by purchase alone. By the purchase it was regarded as a part of the park. It is its direct entrance from the mainland. If the city, under the power given by the act, had purchased lands of greater width, the claim might as well have been made that the whole width should be set apart as a public highway. The part filled and set apart as a public highway has already been described. The pieces outside of that traveled have never been so used, and they must be regarded as belonging to the city. For this purpose the city has the undoubted right to inclose the strips, and devote them to any purpose for the accommodation of the public in connection with the park, for ornamentation or otherwise.

The complainants' bill was properly dismissed.

The decree of the court below is affirmed, with costs.

HOOKER, C. J., MCGRATH and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.