### ABREY v. CITY OF DETROIT.

Appeal—Review—Objections to Evidence—Damages—Instructions—Adjoining Landowners.

* 1. An objection to the admission of testimony will not be considered where no reason is assigned.

2. Where the instruction of the court clearly eliminates from the consideration of the jury one element of damage, and it is evident from the verdict that the jury did not consider it, a judgment will not be reversed for the refusal to give a request upon the subject.

3. When one places a bank of dirt on his own land, above his neighbor's, he is bound to erect a retaining wall sufficient to prevent the dirt from encroaching. This rule applies to municipalities as well as to individuals. The fact that one has built a brick foundation to his house is not an invitation to his neighbor or a municipality to bank earth against it.

Error to Wayne; Frazer, J. Submitted June 6, 1901. Decided July 2, 1901.

Case by George T. Abrey against the city of Detroit for injuries to a building. From a judgment for plaintiff, defendant brings error. Affirmed.

* Head-notes by Grant, J.

The plaintiff had judgment for alleged injuries to his building, claimed to have been caused by the filling in of earth on the side of the roadway which was the approach to the Belle Isle Park Bridge. His testimony supports the following statement of facts: The approach extends southerly from Jefferson avenue to the bridge, and had been used for some time before plaintiff's building was constructed; but, although the grade line of the approach had been established, the earth was not filled in to the entire width of the approach until after the construction of plaintiff's building. The natural surface of the earth sloped from near Jefferson avenue to the water's edge, and on each side of the roadway of the approach the ground sloped to the lot line.

In 1891–92 the plaintiff built a frame building on the east side of the approach, the north line of which was 200 feet south of Jefferson avenue. The building had a frontage of 70 feet on the approach, and was built at or near the lot line. It was 60 feet in depth, and 3 stories in height above the water-table, and the water-table was at or near the grade of the roadway of the approach. The natural surface at the north line of plaintiff's lot was 8 feet below the grade of the roadway, and at the south line of the building it was 22 feet below the grade of the roadway. On the north line the building was supported by a brick wall, and a brick foundation wall extended from the northwest corner of said building 35 feet from the north line on the west side. On the southerly 35 feet of the west line of the building, on the south line, and on the east line, the building rested on piles, which were 26 feet in length at the south end of the building, and driven into the ground 4 feet. Plaintiff obtained from the commissioners of parks and boulevards a license to enter said building from the bridge approach, and constructed a sidewalk along in front of the building at or near the grade of the roadway, and on the line of the water-table, and connected said sidewalk with the roadway of the approach. The first floor of the building was fitted up as a restaurant, the

second floor as a dance hall, with sleeping rooms on the third floor, which is what is known as a "half story." At the southerly end of said building a kitchen had been provided under the first floor.

In the fall of 1893 defendant began to fill in with earth· the space between the roadway and the plaintiff's building, filling it between the roadway and plaintiff's building to the level of the roadway, and banked the dirt over on plaintiff's lot and against plaintiff's building, without putting in any protection in the way of piles, boards, or retaining walls. Plaintiff complained to defendant when the work commenced and ,was in progress, but his complaints were ignored. The dirt broke windows, and filled in so as to prevent the use of the basement door. The foundation wall fell in twice by reason of the pressure of the dirt, as plaintiff claims; and the dirt followed it, filling in the basement, preventing the use of the furnace, and plaintiff threw it back in the basement out of the way, as far as possible. The filled-in earth pressed against his building, and drove the southerly end of it 26 inches to the east; and in 1899, by placing jackscrews against the building on the east side, the building was forced back 18 inches, and still remains 8 inches east of where it was originally placed at the southwest corner. Defendant contended that the building was improperly constructed; that the pile foundation was insufficient to support a building 3 stories, or about 36 feet, in height; and that the damage to the building, if any, was caused by settling or by wind pressure. The jury during the trial was sent to view the premises.

*John W. McGrath*, Chief Assistant Corporation Counsel, for appellant.

*Graves & Hatch*, for appellee.

GRANT, J. (*after stating the facts*). 1. Error is assigned upon the ruling of the court in admitting testimony on the part of the plaintiff as to the cost of repairing the

building by putting a stone or brick foundation under it. Two witnesses had already testified to this without objection. On the following day one of the witnesses was recalled, and revised his figures, showing the cost to be much less than that testified to by him the day before. After detailing how he intended to do this work, he was asked to give a detail of his estimate. To this the objection was made, "I object to this class of testimony,—about the cost of putting up walls and brick piers." No reason for the objection was assigned. This court has repeatedly held that such objections cannot be considered. *Benedict* v. *Provision Co.*, 115 Mich. 527 (73 N. W. 802); *Hutchinson* v. *Whitmore*, 95 Mich. 592 (55 N. W. 438), and authorities there cited.

No motion was made to strike out the prior evidence on the same point. It is not at all clear that the testimony was not competent as an element of damage. If the original foundation, consisting of piles and the brick, was sufficient to maintain the structure, and such a foundation was rendered insecure by the dirt thrown against it, the cost of building a secure foundation would result solely from the fault of the defendant. The cost of restoration might, therefore, be a proper measure of damage. *Hartshorn* v. *Chaddock*, 135 N. Y. 116 (31 N. E. 997, 17 L. R. A. 426). But the verdict of the jury, of $1,000, shows very clearly that this was not considered by them, under the charge of the court, as an element of damage.

2. The court refused to instruct the jury, as requested, that they could not allow the plaintiff what it would cost to place a brick or stone foundation under the building. As already stated, it is evident that the jury did not include this in their verdict. The jury were instructed that there were two elements of damage for them to consider, viz.: Injury to the building, and loss of rents. This instruction eliminated from the consideration of the jury the cost of building a wall as a measure of damages. We therefore think that the refusal to give this charge did not result in any prejudice to the defendant.

3. Error is assigned upon the refusal of the court to instruct the jury:

" 1. The building having been constructed with its water-table at the grade line of the approach, the city had the right to assume that the building was constructed so as to permit the filling complained of.

"2. It appears that this building was constructed with reference to this approach, and its water-table was located with' reference to the grade of that approach; and it is for the jury to say whether or not the plaintiff did not by such construction invite the filling in complained of, and if he did, and the work was done in a careful manner, the plaintiff is not entitled to recover."

There was no evidence upon which to base this charge. Plaintiff not only did not invite the defendant to fill it in, but protested against it. The bank broke the brick wall in, and rendered the basement almost useless. This land was not a public highway, but was purchased by the city as a part of the grounds of the parks and boulevards. Plaintiff had no right to its use for a passageway from the roadbed into his building. *Abrey* v. *Commissioners of Parks & Boulevards*, 95 Mich. 181 (54 N. W. 714). In filling this space the defendant was bound to exercise the same care as though the land were owned by a private individual. Plaintiff was not under obligation to build a wall to protect against the dirt thrown in. When one places a bank on his own land above his neighbor's, he is bound to erect a retaining wall or structure sufficient to keep the dirt from encroaching upon his neighbor's land. The case comes within the maxim, "*Sic utere tuo ut alienum non lædas*."

4. We think all the other exceptions to the refusal to charge as requested are covered by the general instructions of the court. The court, in very clear language, submitted to the jury the theory of the defendant, as well as that of the plaintiff. He distinctly instructed them that "if the building was not erected in a sufficiently stable manner to resist the ordinary action of the wind storms, and if any injury was done by the wind or the

elements, or by anything over which the defendant had no control, it would not be liable for any such injury."

The judgment is affirmed.

The other Justices concurred.