# Alabama Western Railroad Co. v. Wilson.

### Action for Damage to Land.

(Decided May 16, 1911.   55 South. 932.)

1. *Actions; Venue; Corporations.*—Construing together sections 6116 and 6112, Code 1907, it is held that an action against a railroad company, a domestic corporation, for injuries to lands was properly brought in the county where the injury occurred, although the defendant was not doing business and had no agent in that county.

2. *Railroads; Constructions; Injury to Adjoining Lands; Release.*—Although the rule is that all damages incident to the authorized construction of a railroad in a careful manner, are deemed to have been considered in determining the amount agreed on for the conveyance of land for railroad purposes, or in proceedings for condemnation for such purpose, yet in the absence of necessary provisions to the contrary, a conveyance of lands for railroad purposes is not a release of damages resulting from improper encroachments on other lands of the grantor, nor does such conveyance relieve the railroad from liability for damages resulting to land some distance from the road bed occasioned by the washing of sand, dirt, gravel or other debris over the same from the railroad embankment.

3. *Same; Use of Right of Way; Damage to Adjoining Owner.*—Where a railroad embankment is so constructed that ruinous deposits of sand and other debris finds its way from the embankment over adjoining land, the embankment constitutes an actionable nuisance as to such adjoining land owner without reference to whether it was negligently or unskillfully constructed.

APPEAL from Marion Circuit Court.

Heard before Hon. R. T. SIMPSON, JR., Special Judge.

Action by John Wilson against the Alabama Western Railroad Company, for damages to his land. From a judgment for plaintiff defendant appeals. Affirmed.

PERCY, BENNERS & BURR, and W. C. DAVIS, for appellant. The plea in abatement was good under section 6112, Code 1907, unless the action was in tort.—*Sullivan v. Sullivan T. Co.*, 103 Ala. 371. If in tort, then under all the evidence the cause of action arose

more than a year before the commencement of the suit, and hence, defendant's charges on that line should have been given.—Sec. 4840, Code 1907. A railroad company is not liable to adjacent property owners for consequential damages resulting from the construction of its road where such construction is authorized, and it does not appear that it was constructed in an unskillful or improper manner.—*Rogers v. Kennebeck,* 35 Maine 319; *Clark v. Hannibal,* 36 Mo. 202; *Yazoo R. R. Co. v. Davis,* 19 So. 487; 33 Cyc. 353. It is also a general rule that one may put his own land to any reasonable use, and is not liable for such use to adjoining owners, not amounting to a nuisance, notwithstanding injury may result.—1 Cyc. 1018; Joyce on Nuisances, Sec. 33. A landowner may not recover from an adjoining landowner for the washing of sand on his land where such washing is the result of a legitimate use of the defendant's land under the action of the elements.—*Middlesex Co. v. McCue,* 14 Am. St. Rep. 402; *T. & S. R. R. Co. v. Meadows,* 3 L. R. A. 565; *G. C. & S. F. Ry. Co. v. Oakes,* 52 L. R. A. 293. The record discloses no negligence or wrong on the part of the defendant, and hence, the rule in the case of overflow of land has no application.

E. B. & K. V. FITE, and BANKHEAD & BANKHEAD, for appellee. The court properly sustained demurrers to the plea in abatement.—*Beard v. Publishing Co.,* 71 Ala. 60. The complaint was in tort, and a different rule applies.—*M. I. W. Co. v. Eufaula O. & F. Co.,* 110 Ala. 395, and authorities cited. The statute did not begin to run until the injury began to occur. It did not begin to run from the building of the embankment.— *Ala. C. C. & I. Co. v. Vines,* 44 So. 377; *S. A. & M. Ry. Co. v. Buford,* 106 Ala. 307; *Hughes v. Anderson,* 68

Ala. 280. The plaintiff had a cause of action for any and all damages caused to his land by reason of the sand, dirt, etc., washing down upon it from the defendant's right of way.—*Polly v. McCall,* 37 Ala. 20; *Hughes v. Anderson,* 68 Ala. 280; *Drake v. Lady E. C. I. & R. R. Co.,* 102 Ala. 506; 14 So. 749; *Nininger v. Norwood,* 72 Ala. 277; *Crabtree v. Baker,* 75 Ala. 294; *Faris v. Dudley,* 78 Ala. 126; *Sav. A'. & M. Ry. Co. v. Buford,* 106 Ala. 112; 17 So. 395; *C. of G. Ry. Co. v. Windham,* 126 Ala. 560; 28 So. 392; *Sloss-S. S. & I. Co. v. Mitchell,* 161 Ala. 218; 49 So. 851; *Sloss-S. S. & I. Co. v. Mitchell,* 52 So. 69; *Ala. C. C. & I. Co. v. Vines,* 151 Ala. 398; 44 So. 377; *Lindsey v. So. Ry. Co.,* 149 Ala. 349; 43 So. 139.

WALKER, P. J.—The defendant pleaded in abatement of the suit that it is a corporation organized under the laws of the state of Alabama, doing business by agent in Jefferson county, the place of the service of the summons and complaint in the cause, and that at the time of the institution of the suit it was not doing business by agent in Marion county. This plea was demurred to, upon the ground, among others, that it did not show that the act or omission complained of in the complaint did not occur in Marion county. The action of the trial court in sustaining this demurrer is assigned as error. While the predecessor of section 6112 of the Code contained the single provision that "a foreign or domestic corporation may be sued in any county in which it does business by agent," it was decided that, as to an action not on contract, that provision did not have the effect of exempting a corporation from liability to suit in a county in which it was not doing business by agent, and that the statute which now is section 6110 of the Code authorized an action ex delicto against

[Alabama Western Railroad Co. v. Wilson.]

a corporation to be brought in the county in which the act or omission complained of may have been done, or may have occurred, though such corporation, at the time of the institution of the suit, was not doing business by agent in that county.—*Montgomery Iron Works v. Eufaula Oil & Fertilizer Co.*, 110 Ala. 395, 20 South. 300. With this construction fixed upon the two venue statutes, the addition to the statute above quoted of the provision now contained in the second clause of section 6112 of the Code made no change in the law governing the venue of suits against corporations further than, in an action against a corporation for personal injuries, to limit the choice of the plaintiff to the county in which the suit is to be brought, so that, instead of having the right, which was vested in him before this change was made in the statute, of bringing the suit in any county in which the defendant corporation was doing business by agent, he must bring such action, either in the county where the injury occurred or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence. The change in the statute did not affect the right of the plaintiff, in an action ex delicto against a corporation, not for personal injuries, to sue in the county in which the act or omission may have been done, or may have occurred, as authorized by section 6110 of the Code, as construed in the cases above cited, though, at the time the suit is brought, the defendant corporation is not doing business in that county by agent. The result is that this not being an action on contract, nor an action for personal injuries, the ruling of the lower court on the demurrer to the plea in abatement cannot be declared to have been erroneous, as the demurrer disclosed the failure of the plea to state a legal ground for abating the suit.

[Alabama Western Railroad Co. v. Wilson.]

The only other assignments of error which are sought to be sustained by the argument of the counsel for the appellant are those relating to the action of the trial court in overruling the demurrer to the complaint as amended, and in refusing to give affirmative charges in its behalf requested by the defendant; and the single proposition put forward in the argument in support of those assignments of error is that, the fills, or embankments, from which the plaintiff claimed that sand, dirt, clay, gravel, and other debris were washed upon and deposited over his land in large quantities, to the great injury of the same, having been built by the defendant on its own land. bought from the plaintiff, in the construction of its railroad thereon, it could not be made liable to the plaintiff for the injury complained of, unless such injury was caused by the negligent or improper construction by the defendant of such fills or embankments; in other words, that it was an essential part of the claim sought to be sustained by the plaintiff that he allege and prove that the injury he claims to have suffered proximately resulted from a negligent or improper construction by the defendant of the structures mentioned.

Unless the fact of the purchase of the land from the plaintiff would have changed this result, there would be no room to claim that the proposition advanced by the counsel for the appellant (defendant below) could be successfully maintained, without a repudiation of a number of well-considered rulings in this state, if the alleged injury to the plaintiff's land had been attributable, either to a diversion by the defendant of the natural flow of water, whereby a stream or surface rain water which otherwise would have run in a different direction was conveyed to and allowed to overflow plaintiff's lands, to his damage, or to an act or omission of the defend-

ant which resulted in committing refuse from its land
to a stream by which it was carried and deposited as a
sediment over plaintiff's land below, to the impairment
of its fertility and value.—*Savannah, Americus & Mont-
gomery Ry. v. Buford,* 106 Ala. 303, 17 South. 305; *Cen-
tral of Georgia Ry. Co. v. Windham,* 126 Ala. 599, 28
South. 392; *Sloss-Sheffield Steel & Iron Co. v. Mitchell,*
161 Ala. 278, 49 South. 581; Id., 52 South. 69; *Polly v.
McCall,* 37 Ala. 20; *Hughes v. Anderson,* 68 Ala. 280,
44 Am. Rep. 147; *Nininger v. Norwood,* 72 Ala. 277,
47 Am. Rep. 412; *Lindsey v. Southern Ry. Co.,* 149 Ala.
349, 43 South. 139; *Drake v. Lady Ensley Coal, Iron &
R. Co.,* 102 Ala. 506, 14 South. 749, 24 L. R. A. 64, 48
Am. St. Rep. 77; *Ala. Consolidated Coal & Iron Co. v.
Vines,* 151 Ala. 398, 44 South. 377.

In the opinion in the case of *Central of Georgia Rail-
way Co. v. Windham, supra,* which was an action against
a railway company to recover damages claimed to have
been suffered by reason of the construction by the de-
fendant of its roadway and depot, and the digging of
ditches and culverts necessary thereto, causing the
surface or rain water to flow over the premises of the
plaintiff, causing injuries thereto, it was said: "The
foundation of the suit being the active creation of a nui-
sance, and not merely a wrong arising from negligence,
the degree of care used by the defendant in constructing
waterways is immaterial in determining the right to
recover actual damages."

In the case of *Lindsey v. Southern Ry. Co., supra,*
also an action to recover damages for flooding lands,
it was said: "It is not necessary in such cases that
there be an averment that the excavations, though made
by the defendant on his own lands, were negligently con-
structed. The flow of water is governed by well-known
natural laws. The comparative levels of the banks of a

stream and of neighboring lands are of easy ascertainment. It is not an unjust application of the maxim, 'Sic utere tuo,' etc., to require a party in cutting ditches on his own lands to ascertain at his peril whether he will thereby divert the water from a stream, and cause it to overflow the lands of his neighbor.

Speaking of averments of negligence, etc., this court declared, in *Savannah, Americus & Montgomery Ry. v. Buford, supra*: "This verbiage may be rejected as surplusage, for it is obvious the gravamen of the complaint is that the roadbed and embankment, at a particular time after their construction, caused the surface water to flow from the right of way of the defendant, in and upon the lands of the plaintiff, where it did not flow naturally, to her injury."

In the case of *Sloss-Sheffield Steel & Iron Co. v. Mitchel, supra,* it was said: "In cases of damage by nuisance, it is considered that the injurous consequences resulting from the nuisance, rather than the act which produces the nuisance, is the cause of action, and hence it is held that the cause of action does not arise until harmful consequences occur," etc. The expressions are all in harmony with the rule on the subject generally prevailing in other jurisdictions. "Negligence of the defendant is not ordinarily an essential element in an action for damages sustained by reason of a nuisance. The action is founded on the wrongful act in creating or maintaining it, and the negligence of the defendant, unless in exceptional cases, is not material." —Joyce on Nuisances, § 44.

In behalf of the appellant (defendant below), it is claimed that, because of some of its features, this case is not within the influence of the rulings above referred to. It is pointed out that the fill or embankment from which was washed the sand, etc., which was deposited

on the appellee's land, was constructed on a strip of
land 100 feet wide, purchased from the plaintiff, on
which to build defendant's railroad; and some emphasis
is laid on the fact that the construction of the fill involv-
ed no diversion of water, as it ran along a parallel ridge
or divide, which, before the fill was built upon it, caused
the water falling on its north side to flow in one stream,
and the water falling on its south side to flow to anoth-
er stream.

It is contended that the conveyance by the defend-
ant of the strip 100 feet in width operated as a release
of all damages to his remaining lands, resulting from
the construction in a proper manner of the railroad
over and along the strip granted. It is true that all
damages incident to the authorized construction of the
road in a careful and lawful manner are to be deemed
as having been taken into consideration in determining
the amount agreed on for the conveyance of the strip,
for use for railroad purposes; but, unless the terms of
the instrument are such as to require such construction,
it is not to be given effect as a release of damages re-
sulting from improper encroachments upon other lands
of the grantor, or as relieving the grantee from liabil-
ity for damages which cannot be presumed to have been
in contemplation of the parties at the time of the sale.
—*Alabama Midland Railway Co. v. Williams,* 92 Ala.
277, 9 South. 203; 33 Cyc. 162. The mere fact of a sale
by the owner to a railroad company of a strip 100 feet
in width through one part of his farm could not prop-
erly be construed by the court as an authorization by
the landowner to the railroad company to cause sand,
dirt, gravel, and other debris to be deposited on another
part of his farm a quarter of a mile distant from the
strip conveyed. In the absence of anything in the in-
strument that such was the fact, it would involve quite

a stretch of the imagination to presume that, in fixing the price to be paid for the strip granted, the parties had in contemplation the probability or possibility of such an encroachment upon another part of the grantor's farm at some time in the future. It is not made to appear in this case that there was anything in the terms of the conveyance or in the circumstances of the sale to afford support for any such presumption.

The rulings above referred to, which recognized and enforced the liability of one landowner to another owner of land situated on a lower level for damages to the lower land, resulting from the diversion by the upper proprietor of the natural flow of a stream or of surface water, or from the act of the upper proprietor in allowing refuse or waste from the material worked or used on his land to be cast into a stream, whereby it was carried and deposited on another's land below, were not based upon a line of reasoning or a rule of law which would have to be deemed inapplicable where a change made by one proprietor in the surface conditions of his land enabled the natural flow of water therefrom to carry off so much of the soil as to make a ruinous deposit on the lower land of another. Those rulings were but applications of the restrictions imposed by law upon the right of the owner of land to put it to a use lawful in itself. However lawful may be the use, it is subject to a restriction when injury to the property of another is involved. Mr. Bishop states the general doctrine in such terms as to make it plain that it is not inapplicable to such a state of facts as that presented in the case at bar: "One may not, either voluntarily or negligently, cast earth or other substance from his own ground on a neighbor's; or upon his own bring or erect anything, or change the natural position of anything from which the air, the moving water, or any other

[Alabama Western Railroad Co. v. Wilson.]

force of nature will bear to another, or other land, what is distinctly injurious to him; or, by any excavation, structure, or other change of his premises from their natural condition, render them unsafe to other persons and their property lawfully thereon; while yet these restraints will not be drawn so closely as substantially to deprive him of the use of his lands, or to render him answerable for inevitable accidents injuring others."— Bishop on Noncontract Law, § 829.

The law recognizes both the right of the upper proprietor to put his land to a lawful use and the fact that nature itself has subjected much low land to a kind of servitude, in exposing it to the drift and washings from land above it. But the law also restricts the lawful use of his land by the owner, when undue injury to the land of another ensues, and does not permit the owner of one tract of land, by the erection of artificial structures thereon, or other changes in his premises from their natural conditions, so to add to the burden of the natural servitude to which land below it may be subjected as to destroy the usefulness of such land to its owner. When complaint is made because of an injury to lower land resulting from changes made in premises above it from their natural condition, the right to relief may depend upon the extent of the interference thereby caused with the beneficial use of his property by the lower proprietor; for the law does not take notice of every inconvenience to which one proprietor may be subjected by the lawful use by another of his property. However, when it is made to appear that the injury so caused to the lower land amounts to a destruction of its usefulness for the purposes to which it was adapted, it is not to be questioned that a case for the interference of the law is presented. The law does not say that there may not be any enlargement at all of the natural easement

which the owner of an upper parcel of land may have in a lower parcel, for so to say might amount to a practical prohibition of the beneficial enjoyment of his property by the owner of the upper parcel, as any use thereof in the way of industry may of necessity add somewhat to the burden of the natural servitude to which the lower parcel is subjected; but the law does not encourage the industry of the upper proprietor to the extent of permitting him, by a change in his premises from their natural condition, to work a destruction of the value of the property of a lower proprietor. A fault in the argument of the counsel for the appellant lies in its failure to recognize that, as to the owner of other land, that cannot be regarded as a reasonable use of his property by the owner of one parcel, however lawful and meritorious may be the industry in which it is employed, which involves a practical confiscation of the other's land.

This consideration suffices to show that some of the rulings in other states, which are principally relied upon to support the proposition advanced in behalf of the appellant—namely, that whatever destruction of appellee's property may subsequently have resulted from the erection of the fill or embankment in question, the appellee cannot be heard to complain of such results, if there was no negligence or unskillfulness in the original construction—do not in fact lend support to such a contention, as it will be seen, upon an examination of those rulings, that they did not involve any such proposition. For instance, the case of *Middlesex Co. v. McCue,* 149 Mass. 103, 21 N. E. 230, 14 Am. St. Rep. 402, was much relied upon in argument as an authority supporting the proposition advanced in behalf of the appellant. The decision in that case was that the owner of land on the slope of a hill running down to a millpond on the land

of another was not liable for filling such pond by culti-
vating, manuring, and surface draining his own soil in
the ordinary way, for the purpose of raising garden veg-
etables. It was said in the opinion in that case: "Lia-
bility depends upon the nature of the act, and the kind
and degree of the harm done, considered in the light of
expediency and usage. For certain kinds there is no lia-
bility, no matter what the extent of the harm. A man
may lose half the value of his house by the obstruction
of his view, and yet be without remedy. In other cases
his rights depends upon the degree of the damage, or
rather of its cause. He must endure a certain amount
of noise, smells, shaking, percolation, surface drainage,
and so forth. If the amount is greater, he may be able
to stop it, and to recover compensation. As in other
matters of degree, a case which is near the line might
be sent to a jury, to determine what is reasonable. In
a clear case it is the duty of the court to rule upon the
parties' rights. * *.* In this case it complains, not that
the substances brought down are offensive, but that the
defendant causes any solid substance to be brought
down at all. Practically it would forbid the defendant
to dig his land, at least without putting up a guard,
since the surface drainage necessarily carries more of
the soil along with it, if the earth is made friable by
digging. This would cut down the defendant's right
of surface drainage to a very small matter indeed. We
are of opinion that a man has a right to cultivate his
land in the usual and ordinary way, as well upon a
hill as in the plain, and that the damage to the lower
proprietor of the kind complained of is something he
must protect himself against as best he may." On the
face of it, it would seem to be a perversion of that rul-
ing to invoke it in support of the proposition that an
upper proprietor may, as the result of an artificial struc-

ture upon his land, so encroach upon the lower land of another as to destroy its value to its owner.

In a later ruling by the same court, in the case of *Miles v. Worcester,* 154 Mass. 515, 28 N. E. 676, 13 L. R. A. 841, 26 Am. St. Rep. 264, it was made plain that the court did not intend by its former ruling to open the way for any such result. That was a case of an encroachment upon the plaintiff's land of a wall which had been built upon defendant's land, and which subsequently was pressed out of position by the weight of the filling behind it. It was held that the wall, in its position upon plaintiff's land at the time the suit was brought, constituted an actionable nuisance, and that the question of negligence in the original building of the wall was not material. Evidently the ruling in the case of *Middlesex Co. v. McCue, supra,* was invoked by the defendant, as the court in the later case said: "The case is distinguishable from *Middlesex Co. v. McCue,* 149 Mass. (21 N. E. 230, 14 Am. St. Rep. 402), where soil from defendant's land upon a hillside was washed into the plaintiff's millpond by the rains, when the defendant had built no artificial structure, and had done nothing more than to cultivate his land in the ordinary way." The statement just quoted is enough to show that such rulings as that made in the case of *Middlesex Co. v. McCue, supra,* lend no support to the claim made in behalf of the defendant in this case that it is entitled to exemption from liability for ruinous consequences to the plaintiff's land resulting from the presence of the fill or embankment on defendant's land, if there was no negligence or unskillfulness in the original erection of that structure.

Enough, perhaps more than enough, has been said to indicate the conclusion of the court that, with whatever care or skill the embankment or fill in question

may have been constructed, and however lawful may be the use to which it is put, the law does not exempt the defendant from liability to the plaintiff, if the consequences to the plaintiff's land, attributable to the presence of that structure on the defendant's land, amount to the creation of what the law, under any other circumstances, would declare to be an actionable nuisance.

It is but a recognition of the principles which underlie the Alabama rulings above cited, which are abundantly illustrated by decisions in other jurisdictions on states of fact not dissimilar to that in the case at bar, to declare a ruinous deposit of sand, dirt, gravel, and other debris upon plaintiff's land, which naturally resulted from the presence on the higher land of the defendant of the embankment or fill mentioned in the pleadings and in the evidence, constituted an actionable nuisance, regardless of whether the defendant was negligent or unskillful in the original erection of that structure.—2 Cooley on Torts (2d Ed.) pp. 1181, 1182; *Abrey v. Detroit,* 127 Mich. 374, 86 N. W. 785; *Dunsbach v. Hollister,* 49 Hun. 352, 2 N. Y. Supp. 94. Such a case hardly could be regarded as one "near the line," within the meaning of that expression as used in the Massachusetts ruling above quoted from.

The result is that neither of the propositions put forward in behalf of the appellant to support its appeal can be sustained.

Affirmed.