# Sloss-Sheffield Steel & Iron Co. *v*. McCullough.

## *Damages for Flooding Land.*

(Decided June 4, 1912. 59 South. 210.)

1. *Waters and Water Courses; Flowage of Land; Pleading.*—A complaint alleging that defendant maintained a slush pond adjoining plaintiff's land into which was turned the refuse from defendant's iron ore washers; that it was defendant's duty to so construct, arrange and keep the pond and the means of confining the slush, mud and water so that the same could not escape and injure plaintiff's land; that defendant so negligently construed, arranged and allowed its embankment about the pond to remain of an insufficient height and thickness to confine the mud, slush and water, and that the embankment gave way and flooded plaintiff's land, was not defective or objectionable as imposing upon defendant a too high degree of duty.

2. *Same; Damages; Measure.*—In an action for flooding land with refuse and debris, the measure of the damages was the difference in the value of the land before and after the injury.

3. *Same.*—Evidence as to the value of the land before it was flooded with refuse, and of its value just after the injury, was admissible as determining damages.

4. *Same; Jury Question.*—Where the evidence was without dispute that plaintiff's land was flooded by mud and debris from the pond or reservoir of defendant, whether or not defendant was responsible therefor, was a jury question.

5. *Trespass; Injury to Land; Damages.*—Where it did not appear that the entire tract of land was flooded, and the evidence was in dispute as to how much of it was flooded, and as to the amount of damage and the acreage damaged, the court was not in error in declining to limit the damage to any particular number of acres of the tract embraced in the complaint.

6. *Same.*—One may not voluntarily or negligently cast earth or other substances from his own land onto that of his neighbor, to the damage of the neighbor's land.

7. *Same; Title; Possession.*—Evidence that plaintiff and his tenants had been in undisputed possession of the land for more than fifty years, was sufficient proof of title to enable plaintiff to recover in an action for damages for flooding said land by a defendant who claimed no right in or to flood the land.

8. *Appeal and Error; Harmless Error; Instructions.*—The oral charge of the court stated and examined and held not to constitute prejudicial error, as its misleading tendencies, if any, could have been corrected by explanatory charges which should have been requested.

APPEAL from Franklin Circuit Court.

Heard before Hon. C. P. ALMON.

Action by T. E. McCullough against the Sloss-Sheffield Steel & Iron Company for damages for overflowing lands. Judgment for plaintiff, and defendant appeals. Affirmed.

The complaint is as follows: "The plaintiff, T. E. McCullough, claims of the defendant, the Sloss-Sheffield Steel & Iron Company, a corporation, the sum of $1,000, as damages, for that, whereas, heretofore, to wit, on or about July 13, 1909, plaintiff was in possession of and owned the following described tract of land, viz., the N. E. 1/4 of section 4, township 7, range 11, Franklin county, Ala., and at and before the time aforesaid the said defendant was operating and working certain iron ore mines in said state and county, and for the purpose of putting the iron ore from said mines in a marketable condition and suitable for use was operating certain implements, machines, or plants styled 'iron ore washers,' by the passage through and over which the said iron ore, earth, and other substances in which said iron ore was mingled when taken from the mines, were thereby prepared for use and market. After washing said iron ore, the water used in said operation and the dirt and other substances so separated from said iron ore ran and was conveyed by the defendant's works in the form of mud or slush from

29—177

the said washers to a lower place, pond, or basin con-
structed by the defendant for the deposit of such mud,
slush, and water, and styled a 'slush pond.' That said
mud, slush, and water were there deposited in said
pond, and said pond was inclosed by an embankment
made of earth about six feet high running parallel with
the said lands of plaintiff. That said pond was close
to said lands, and was situated on a higher level. than
the said lands. Plaintiff avers that it became and was
the duty of the defendant to so construct, arrange, and
keep said slush pond, and the means of confining said
slush, mud, and water as to prevent the mud, slush,
water, and other foreign substances from escaping from
said pond, and from overrunning and overflowing and
injuring the said land of plaintiff; but the defendant
so negligently construed, arranged, and allowed said
embankment surrounding said pond to remain of an in-
sufficient height and thickness to confine said mud,
slush, and water, and at the time aforesaid the said em-
bankment to said slush pond broke or gave way, and
thereby the mud, slush, water, debris, and foreign sub-
stances contained and previously confined in said pond
overflowed the said lands of plaintiff, thereby washing
said land, depositing mud, slush, debris, and other for-
eign substances on same, thereby causing plaintiff's
said land to be greatly injured and its value impaired,
to the damage of plaintiff in the sum of $1,000 as afore-
said, for which he brings this suit."

The demurrers interposed were: That no cause of
action was stated; that the complaint imposes a high-
er duty on the defendant than that imposed by law;
that the complaint fails to show any fact that would
constitute or produce any absolute duty on the part
of defendant to so construct, arrange, and keep said
slush pond, and the means of confining said slush, mud,

and water as to prevent same from overflowing said embankment; that no negligence in law is averred; and that the complaint is multifarious, in that it attempts to set up a right of action for the breach of an absolute duty, and also for the negligent construction and arrangement of said embankment around said pond.

The evidence tended to show that plaintiff had possession of the land overflowed for 56 years continuously. The evidence tended to show, further, that the land was worth about $30 before the overflow, and was worth considerably less after the overflow. Defendant offered to show by the owner of the land that the land was more valuable now than it had ever been, and that it was more productive now than it had ever been. There was evidence tending to show the value of the land just before and just after the overflow.

ALMON, ANDREWS & PEACH, and TILLMAN, BRADLEY & MORROW, for appellant. The complaint alleged a too high degree of duty, and the demurrers should have been sustained.—*Ala. C. C. & I. Co. v. Turner*, 145 Ala. 639. The court was in error in permitting the court to be asked how much he considered the place worth after the overflow.—3 Enc. of Evid. 857. The court erred in refusing to permit evidence of damages as to the market value of the land as sought to be elicited by defendant.—*Drake v. Lady C. I. & R. R. Co.*, 102 Ala. 501; *Tutwiler C. C. & I. Co. v. Nichols*, 146 Ala. 374; *Ala. C. C. & I. Co. v. Turner, supra*. The court's oral charge was error.—Sec. 1543, Code 1896. The court was in error as to the sufficiency of title to maintain the action.—1 Mayf. 75-6. Plaintiff failed to carry the burden requisite to the maintenance of the action, and defendant should have been given the affirmative charge as requested.—*Thompson v. Maddox*, 117 Ala.

468; *Hamilton's Case,* 100 Ala. 252, and authorities supra.

B. H. SARGENT, and WILLIAMS & JONES, for appellee. It was not shown that the floods were unprecedented or within the class known as the acts of God.— *Lindsey v. So. Ry.,* 149 Ala. 349; *Gulf Co. v. Walker,* 132 Ala. 556. The complaint was sufficient. The measure of damages was the difference in value of the land before and after the flooding, and not the damage for the market value. Plaintiff's possession was sufficient to authorize him to maintain the action, the defendant claiming no right to flood the land.—159 Ala. 614. The evidence was sufficient to carry the question to the jury as to defendant's responsibility for the overflow. —*Ala. Wes. Ry. v. Wilson,* 1 Ala. App. 307.

MAYFIELD, J.—This is an action on the case to recover damages to lands caused by overflowing them with water, and depositing thereon mud and other debris. The defendant maintained and used a "slush pond" on its premises for the purpose of catching and retaining the mud and refuse matter resulting from the washing of iron ore. The banks of this slush pond broke, allowing the water, mud, and debris to flow and to be deposited on the plaintiff's land, to his damage, hence this suit.

The first error insisted upon is that the complaint is defective, in that it imposes too high a duty upon the defendant relative to the construction and maintenance of the dam around its slush pond. We cannot agree with appellant in its construction of the complaint. The complaint was sufficient, and was not subject to the demurrer.

[Sloss-Sheffield Steel & Iron Co. v. McCullough.]

There was no reversible error in the rulings of the trial court upon the evidence as to the damages. The measure of damages was the difference in value of the plaintiff's land just before and just after the injury complained of.

It was proper, of course, in order to ascertain this difference, to prove the value of the land before, and the value after the injury. This evidence should be, as we think it was in this instance, limited to the time just prior to, and that just after, the injury. The objections which appellant interposed to the admission of such evidence did not specify or mention any particular ground, and therefore did not call the attention of the court to the specific point of objection now urged to the evidence, that it did not limit the price or value of the premises to the times immediately before and after the injuries complained of, nor to the property actually flooded. If the attention of the court had been called to the fact that the evidence was not so restricted, no doubt it would have so limited it, as it subsequently did when its attention was so directed to it.

We are not prepared to say, however, that the trial court should have limited the damages to any particular number of acres of the 160-acre tract embraced in the complaint. While the entire tract was not flooded, the evidence was in dispute as to how much of it was, as it was likewise, touching both the amount of the damage and the acreage damaged. The plaintiff could, and did, correct any possible injury flowing from the generality of the evidence by a cross-examination of his witnesses on the points as to which general objections were interposed. The rulings sustaining objections to the evidence of the defendant, offered to prove damages, appear to involve no injury, if they could be said to be error; for the reason that the wit-

ness in each case was allowed to testify, and did testify, fully as to the matter inquired of by the defendant, when objections were sustained to the question propounded by it to the witness. In other words, it fully appears that all of the witnesses who were shown to be competent as to the matter did ultimately testify fully as to the question of damages, which was the subject of inquiry.

It is insisted by appellant that plaintiff did not prove title to the land in question in such sort as to support the action. In this contention appellant is in error. The undisputed evidence showed that the plaintiff and his tenants had been in the undisputed possession of this land for more than 50 years. No other person was shown to have or to claim, nor did the defendant claim any right to flood such land. This was certainly sufficient proof of title to support the action, without any proof of paper title. The proof of possession was sufficient to create the presumption of title. There was likewise no reversible error in the court's instructing the jury that, if the plaintiff had shown an adverse possession of land for more than ten years, he had made sufficient proof of title.

The bill of exceptions contains the following recital as to the exception to that part of the court's charge relative to proof of title by possession: "The court in his oral charge to the jury, among other things, charged the jury as follows: 'There are two ways by which title may be acquired, by paper or written title, and by adverse possession for 10 years or more. The plaintiff does not undertake to show title by written or paper title. He contends that he has been in adverse possession of the land for more than 50 years, and relies on ownership by adverse possession. This is a question for you to decide, and you must decide it from the evi-

dence. If you are reasonably satisfied from the evidence that the plaintiff has been in adverse possession of the land for more than 10 years, then you would be authorized to find for the plaintiff on the issue of the plaintiff's ownership of the land that he contends was damaged by the overflow, if you find there was an overflow. The court was of the opinion that he defined what it took to constitute adverse possession, but the defendant's attorneys insists that this was not done, and that this is the reason that they excepted to this part of the court's oral charge. If the court did not define adverse possession and this was the reason the defendants excepted to this part of the court's charge, if the court had been informed that was the exception the court would have gladly defined to the jury what it took to constitute adverse possession, or if the defendant had asked a special written charge defining adverse possession, the court would have given it.' To the action of the court in giving the above charge to the jury the defendant then and there in open court duly excepted." We are of the opinion that there was no reversible error in this part of the charge of the court. Any misleading tendencies in the charge could and would have been corrected by explanatory charges, as the bill of exceptions recites. Moreover, there was really no conflict or difference in the evidence as to the plaintiff's title to the land.

There was certainly no legal ground upon which the defendant was entitled to the general affirmative charge. The evidence was without dispute that plaintiff's land was flooded and that mud and debris was deposited thereon, and that it came from defendant's slush pond. This certainly made it a question for the jury, whether or not the defendant was responsible therefor.

The law as to the liability of a defendant for depositing or placing such matter or other foreign substances upon the lands of the plaintiff was passed upon in a well-considered case (*Alabama Western Railroad Co. v. Wilson,* 1 Ala. App. 306, 55 South. 932), in which the rule laid down by Mr. Bishop is quoted with approval, which rule is as follows, and is apt, to support the ruling of the trial court in this case: "One may not, either voluntarily or negligently, cast earth or other substance from his own ground on a neighbor's, or upon his own bring or erect anything, or change the natural position of anything from which the air, the moving water, or any other force of nature will bear to another-er, or other land, what is distinctly injurious to him; or, by any excavation, structure, or other change of his premises from their natural condition, render them unsafe to other persons and their property lawfully thereon; while yet these restraints will not be drawn so closely as substantially to deprive him of the use of his lands, or to render him answerable for inevitable accidents injuring others."—Bishop on Noncontract Law, § 829. There was not in this case evidence sufficient to show that the damages complained of were the result of inevitable accident or of an act of God, as being caused by an unprecedented flood or one not reasonably to be expected.

We find no error, and the judgment of the trial court is affirmed.

Affirmed. All the Justices concur.