GOODFELLOW TIRE CO. *v.* COMMISSIONER OF PARKS AND BOULEVARDS OF THE CITY OF DETROIT.

1. HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS—RIGHT OF ACCESS.
   The owner of property abutting on a street has ordinarily a right of ingress and egress to and from his property.

2. SAME—STATUTES—DETROIT CHARTER—MANDAMUS.
   The commissioner of parks and boulevards of the city of Detroit may not deny the application of an abutting property owner to construct a driveway for access from his property to the Grand Boulevard, but should grant a permit therefor, subject to reasonable regulations and requirements, under Act No. 374, Local Acts 1879, and the amendments thereto.

Certiorari to Wayne; Donovan, J. Submitted October 4, 1910. (Calendar No. 24,099.) Decided November 11, 1910.

Mandamus by Goodfellow Tire Company against Myrtle P. Hurlbut, commissioner of parks and boulevards of the city of Detroit, to compel him to issue a permit to relator to construct a driveway from Grand Boulevard east, to relator's factory. An order denying the petition is reviewed by relator on writ of certiorari. Writ granted.

*May & Dingeman,* for relator.

*P. J. M. Hally,* for respondent.

MOORE, J. The relator is a Michigan corporation, whose principal business is that of filling automobile tires with a composition claimed to render them puncture proof. It also sells and handles automobile accessories. It is the owner of the north 95 feet of the easterly 100 feet of lots 2 and 3 and the southerly 5 feet of lot 1 of Frisbee & Foxen's subdivision of part of fractional section 31. These lots are at the corner of the boulevard and Woodward

avenue in the city of Detroit. Lots 1, 2, and 3 front upon Woodward avenue. On the front 100 feet of the lots a block of stores, three stories high, is erected; at the rear of said stores, and between them and the alley, the relator is erecting a two-story building for the purpose of carrying on its business. Its property fronts on the boulevard. It applied to the respondent for a permit to give access to its building to and from the boulevard by means of two driveways. The commissioner having denied the application for permission to construct the driveways, a petition for a writ of mandamus was filed in the court below, and, on denial of this petition, the cause was brought to this court by certiorari.

The claim of the respondent is stated by his counsel as follows (we quote from the brief):

"The respondent further says in his answer that under the statute relating to said office of commissioner of parks and boulevards of said city of Detroit, and to the parks and boulevards of said city, he submits he has the sole charge and management and control of said parks and boulevards and of the improvements and maintenance thereof, and he avers it was and is within his exclusive judgment and discretion, as to whether a permit should be issued for the construction of said driveway, and, in the exercise of such judgment and discretion, he refused to issue a permit therefor. This respondent respectfully submits that this court has no jurisdiction to control the exercise of the discretion of this respondent to command him as against his judgment in the premises to issue permits for the construction of driveways on said boulevard or determine when, how, or where said driveways shall be made, and he makes this submission as in the nature of a demurrer to said petition."

One of the counsel for respondent says in his brief that:

"Almost this identical question here contended for was presented to this court in a case which is entitled *Abrey* v. *Livingstone*, 95 Mich. 181 (54 N. W. 714). The jurisdiction of the commissioner in that case and in this is similar, and the act there construed is the act here under consideration. Abrey desired to have ingress and egress from the land under the control of the park commissioners

to his land which abutted upon its holdings, and his right for that purpose was denied."

An examination of that case will show that the act which was construed was not the one before us now, but was Act No. 391, Local Acts 1879. In disposing of the case, Justice Long, speaking for the court, said, in part, as follows:

"The complainants filed their bill in the Wayne circuit court in chancery, setting up that they are the owners of the lands adjacent to these strips, and have a frontage thereon. They procured their titles to these lands after Kanter and wife deeded the approach to the bridge to the city, and now claim that such approach is in its entire width a public street, through which they have the right of ingress and egress from their lands. It is claimed by the defendants that it is their intention to ornament these strips outside of the walks, and, to prevent encroachments thereon, to erect necessary fences or walls along the outer sides of the same. The complainants seek by their bill to enjoin the defendants from erecting and maintaining these fences or walls. Defendants claim that these pieces of land are not a part of the public highway, but that the city may devote them for the purposes of a park, and shut off the approaches from either side. Complainants' bill was dismissed in the court below, and they appeal. It is contended by counsel for complainants that these parcels of land have always been regarded throughout their entire width by the common council and the board of public works as a street; that the strip of land from Jefferson avenue to the river was purchased for the purpose, and no other, of an approach to the bridge and a continuation or extension of the boulevard to the bridge. This piece of land was purchased by the city under the power granted by the above-named act."

The court held, in that case, with the defendant, that the land had never been a highway and sustained the contention of the city. The boulevard was called into existence by virtue of Act No. 374, Local Acts 1879. When the boulevard was established, much of it, including the land now belonging to the relator, was in the country outside of the city limits. Section 10 of the act gave to the commissioners the following powers:

" To adopt plans, for constructing, laying out, improving, ornamenting and beautifying the said boulevard, and shall have a supervisory and superintending control of the execution of such plans. They shall also have a like control and management of the maintenance and care of the said boulevard, and shall have power to make all reasonable rules and regulations concerning the use of said boulevard, and for the protection of the same."

Section 14 of the act reads:

"Whenever the said boulevard, or any part thereof, shall be opened, either by grant or conveyance, or by proceedings *in invitum*, the same shall, under such reasonable rules and regulations as shall be adopted by the said board of boulevard commissioners, be common and public, for the uses and purposes of such boulevard."

After the city limits were extended so as to take in the boulevard, legislation was had to meet the new conditions. The respondent is the successor of the previous commissioners. The act of 1879 was amended May 24, 1895, and May 4, 1901. By the act of 1895 (Act No. 436, Local Acts 1895), numerous detailed provisions were added further regulating or empowering the commissioners to regulate the use of the parks and boulevards. For example, prohibiting the bringing or the driving of animals, excepting horses, in the parks and boulevards; limiting the rate of speed, restraining the use of footpaths, grass plats, and other portions thereof, excepting upon carriage drives, by vehicles; preventing the obstruction of roadways, the injuring of property, the destruction of or interference with plants, trees, grass, etc. Heavy traffic was forbidden excepting where there was no alley in rear, and then only to the nearest cross street. Funeral and other processions were prohibited, as was also the playing of games and the speeding of horses, excepting at places designated by the commissioner. The act of 1901 (Act No. 417, Local Acts 1901) provided for a single commissioner of parks and boulevards in place of the board of commissioners and re-enacted many of the sections of the act of 1895, substituting "commissioner" in place of "commission-

ers " or " board." In its present form both of these acts contained the following (section 39, Act No. 436, Local Acts 1895; section 39, Act No. 417, Local Acts 1901):

" No person shall dig, remove or carry away any sward, sand, turf or earth in or from any public park or boulevard, and no person shall open or dig up or tunnel under any part or portion of the boulevard without a permit from the commissioner of parks and boulevards, and before granting any such permit the applicant therefor shall be required to deposit with the secretary of said commissioner such sum of money as the superintendent of the boulevard, or such other officer as the commissioner may designate for that purpose, shall estimate will fully cover any expense to be incurred by the commissioner in connection with such opening or tunneling, and the commissioner may make suitable regulations and conditions with respect to issuing said permits. And said commissioner may retain the actual expense, which shall be certified by the superintendent, which may be incurred by the commissioner in connection with any work done by him, for the purpose of restoring any roadways, sidewalks, planting place or other portion of said boulevard, and the secretary shall refund to the person to whom said permit shall be issued the difference, if any, between the amount deposited and the amount so certified by the superintendent. Carriage or drive ways and foot walks connecting with any premises adjoining the boulevard, or hitching posts thereon, shall be allowed only on a permit issued under this section, and the material used in making such ways, walks or posts, shall be determined by the said commissioner."

It is claimed under existing conditions the commissioner may deny relator the right to construct any driveway from his premises to the boulevard.

At volume 28 of Cyc. p. 856, it is said:

"An abutting owner has two distinct kinds of rights in the street—the public one, which he enjoys in common with all citizens, and private rights which arise from his ownership of contiguous property. Among the private rights are the right of free and unimpeded ingress and egress to and from his property for himself and animals and goods   *   *   *   and the right to have the street kept open and continued as a public street for the benefit of his contiguous property."

In the same volume, at page 863, it is said:

"Abutting owners have an indefeasible right of access to and from their property to the street."

In the notes many cases are cited which sustain the text.

Counsel for respondent cite *McCormick* v. *Park Commissioners*, 150 Ill. 516 (37 N. E. 1075); but that case is not conclusive in favor of the respondent. Indeed, it is said in the opinion:

"Undoubtedly the owners of lots bordering upon streets or ways have the right to make all proper and reasonable use of such part of the street for the convenience of their lots, not inconsistent with the paramount right of the public to the use of the street in all its parts. *Smith* v. *McDowell*, 148 Ill. 51 (35 N. E. 141, 22 L. R. A. 393), and cases cited. In the absence of legislative direction or municipal declaration of what such rights shall be, what is to be deemed a reasonable and proper use will depend, in a large degree, upon the public usage in like instances, and upon the local situation. General use by lot owners, and acquiescence therein by the public and public authorities, may always be resorted to as evidence of what is a reasonable and proper use and of the existence of the right. 2 Dillon on Municipal Corporations, §§ 521, 553, 585, 794; *Van O'Linda* v. *Lothrop*, 21 Pick. (Mass.) 292 (32 Am. Dec. 261); *Com.* v. *Blaisdell*, 107 Mass. 234; *Nelson* v. *Godfrey*, 12 Ill. 22."

*Scovel* v. *City of Detroit*, 146 Mich. 93 (109 N. W. 20), is also cited. In the opinion in that case occurs the following:

"In 2 Dillon on Municipal Corporations (4th Ed.), § 656, it is said:

"'Public streets, squares, and commons, unless there be some special restriction, when the same are dedicated or acquired, are for the public use, and the use is none the less for the public at large, as distinguished from the municipality, because they are situate within the limits of the latter, and because the legislature may have given the supervision, control and regulation of them to the local authorities. The legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject (according to the weight of more recent ju-

dicial opinion) to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places.'"

Our attention has not been called to a case holding that an abutting owner might be deprived of ingress and egress by means of a driveway to and from his property to the highway in front of it. Certainly, when the legislature, in 1879, gave to the commissioners authority "to make all reasonable rules and regulations concerning the use of said boulevard," no one supposed they might deny the right of the abutting owner to construct a driveway to the boulevard. The provision in section 39, reading:

"Carriage or drive ways and footwalks connecting with any premises adjoining the boulevard, or hitching posts thereon, shall be allowed only on a permit issued under this section, and the material used in making such ways, walks or posts, shall be determined by the said commissioner"

—does not contemplate that the permit shall be denied, but the inference is a fair one that it shall be allowed upon suitable regulations and conditions.

The commissioner, instead of refusing the permit, should have granted it subject to reasonable regulations and conditions as to number, location, plan of construction, and material used therein, and it will be so ordered.

BIRD, C. J., and OSTRANDER, HOOKER, and McALVAY, JJ., concurred.