# ANDREW PATERSON AND ELIZABETH PATERSON v. BENJAMIN F. RUSH, CITY AND COUNTY ENGINEER IN THE DEPARTMENT OF PUBLIC WORKS OF THE CITY AND COUNTY OF HONO-LULU.

## No. 2354.

ARGUED OCTOBER 13, 1938.      DECIDED FEBRUARY 6, 1939.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE MATTHEWMAN IN PLACE OF COKE, C. J., ABSENT.

882

OPINION OF THE COURT BY PETERS, J.

Mandamus was brought by the petitioners to compel the city and county engineer of the City and County of Honolulu to issue to them a permit to lower ten linear feet of concrete curbing on Kuhio Avenue, Honolulu, in front of and directly opposite an alley, known as "alley U" and being the same premises described in land court certificate of title number 13060, issued to the City and County of Honolulu. After a hearing on the merits, the circuit judge quashed the alternative writ. From the order to that effect, the petitioners appealed.

The only questions necessary of consideration are, (a) whether there is appurtenant to lot 135 situated on the north side of Kuhio Avenue of which the petitioners are seized in fee simple as tenants by the entirety the right of ingress and egress by vehicles and otherwise to and from Kuhio Avenue over a ten-foot alley known as "lot U," running from Kuhio Avenue to Ala Wai Boulevard and immediately adjoining the westerly boundary of lot 135 and (b) if so, are the petitioners, as owners of the dominant estate, "owners" of the property "abutting" Kuhio Avenue at the intersection of the avenue and alley "U," within the meaning of those terms as used and employed in section 3 of ordinance 201 of the City and County of Honolulu?

The evidence upon the main issues is undisputed. It appears that on September 4, 1926, the Realty Associates, Limited, and the Bishop Trust Company, Limited, were owners in severalty of portions of the lands described in land court applications numbers 537 and 550, and that there had been issued to the Bishop Trust Company,

Limited, as the owner in fee simple of the portion owned by it, transfer certificate of title number 10776. The extent of its holdings does not appear except by inference from conveyances subsequently made. Previously and on August 5, 1926, there had been filed in the land court a map of a proposed subdivision of lots A, B and C of land court application number 537 and lots A and B of land court application number 550 into lots 1 to 157 (inclusive) and lots D to Z (inclusive). This map is identified in the land court in the matters of land court applications 537 and 550 as "Map No. 3, Kalakaua Acres." It delineates a subdivision of approximately 23 acres of land situated on the northeast side of Kalakaua Avenue at Kalia, Kuamoo, Keoniana and Pau, Waikiki, Honolulu, Hawaii, into blocks and lots with intersecting streets and alleys. The lots are numbered and the streets and alleys identified by letters. The tract is popularly referred to as "Kalakaua Acres." The subdivision was approved by the judge of the land court on September 4, 1926. The map was produced from the office of the registrar of the land court. The greater portion of the tract lies westerly of Kalaimoku Street and that portion of map number 3 that refers thereto is reproduced in the margin.[1] As far as we know, at the time the map was filed in the land court, of all the streets referred to therein, Kalakaua Avenue and Ala Wai Boulevard were the only streets that were public streets and part of the public street system of the city of Honolulu. Lot 135 of Kalakaua Acres was acquired by the petitioners from Dessa Arioli and there was issued to them out of the land court on, to wit, May 8, 1937, transfer certificate of title number 16753. The premises subject to the transfer certificate are described as follows: "Lot 135, area 4,500.0 square feet, as shown on Map 3, filed in the Office of the Assistant Registrar of the Land Court of the Territory of Hawaii which Land Court Application No. 537 of John Francis Bowler and August Ahrens, Limited, and being all of the land

described in Transfer Certificate of Title No. 16,490 issued to Dessa Arioli." Lot 135 is situated on the northeast corner of the intersection of Kuhio Avenue and a ten-foot alley running at right angles to Kuhio Avenue from Ala Wai Boulevard to Kalakaua Avenue, that portion thereof between the boulevard and Kuhio Avenue being lot "U" and that portion thereof between Kuhio Avenue and Kalakaua Avenue being lot "N." Lot "U" bisects the block bounded by Namahana Street, Ala Wai Boulevard, Olohana Street and Kuhio Avenue and is parallel to and equidistant from Namahana and Olohana Streets. Lot 135 has a frontage on Kuhio Avenue of 45 feet and on alley "U" of 100 feet. In the block in which lot 135 is included there are 24 lots all of which but the four situated upon the corners of intersecting streets abut alley "U."

On December 14, 1933, the Bishop Trust Company, Limited, addressed a communication to the mayor and

board of supervisors of the City and County of Honolulu, offering to convey to the city and county the "Waikiki" (easterly) half of Olohana Street between the Ala Wai Boulevard and Kalakaua Avenue, indicated on the map by the letters "P" and "T," all of Kalaimoku Street, similarly indicated as "R" and "V," and that portion of Kuhio Avenue lying easterly of the middle line of Olohana Street. It declared that the streets had been paved and requested that it be advised whether the city and county would accept title to them. On December 26, 1933, the committee on public works of the city and county, to which had been referred the communication of the Bishop Trust Company, Limited, reported favorably thereon, recommending that the trust company be informed that the city was prepared to accept title to the streets offered "as they have all been permanently improved." The recommendation was adopted by the board of supervisors forthwith. On March 31, 1934, the Bishop Trust Company, Limited, conveyed to the City and County of Honolulu "for road purposes only" the streets referred to in their communication of December 14 previous and also lot "U," the latter being the ten-foot alley immediately adjacent to lot 135. It is to be noted that the deed recites that the premises conveyed are portions of the premises described in transfer certificate of title number 10776, dated December 17, 1931, issued to the grantor, also that lot 135 and alley "U" physically abut upon that portion of Kuhio Avenue which was accepted by the city and county as a public street. On June 12 following, the city and county clerk transmitted the deed to the commissioner of public lands for recordation accompanied by blue prints of the land involved and transfer certificate of title number 10776. Thereafter and on, to wit, June 14, 1934, there was issued to the city and county transfer certificate of title number 13060 of the premises conveyed by the deed of the Bishop Trust Company, Limited. It is also to be noted that

both the deed and the transfer certificate of title in respect to lots "P," "Q," "T," "U" and "V" refer to "Map No. 3," the subdivision map approved September 4, 1926, heretofore referred to. The transfer certificate of title recites that the premises conveyed are portions of the land described in transfer certificate of title number 10776 issued to the Bishop Trust Company, Limited. It is reasonably inferable from this evidence that the city and county had also accepted title to the remaining portions of Olohana Street and Kuhio Avenue included in the tract.

On September 20, 1928, upon the application of the owner of lots 121 and 122 abutting upon alley "U," the city and county engineer granted a permit to lower fifteen linear feet of curbing for one drop-curb driveway on the southerly side of Ala Wai Boulevard opposite the intersection of alley "U" and the boulevard. On May 20, 1937, the department of buildings of the City and County of Honolulu issued to the petitioners a building permit for the construction of apartments for six families, with separate garage in the rear at 2088 Kuhio Avenue, which is lot 135. The blueprints of the proposed improvements disclose that the garage to be constructed was 14′ x 32′ and the entrance thereto faced upon and immediately adjoined alley "U." In August, 1937, when the improvements were about eighty to eighty-five per cent complete, the petitioners, informally, and on September 3 following, formally, in writing, applied to the city and county engineer for a permit to lower ten feet of curb on Kuhio Avenue immediately opposite lot "U," reciting that the purpose of the request was to permit convenient access by automobile from Kuhio Avenue over the alley to the contemplated garage situated in the rear of the premises at 2088 Kuhio Avenue. The application for a permit was refused. No reason was assigned for such refusal further than that the issuance of a permit was contrary to the policy of the city and county in respect to alleys

in Kalakaua Acres. By its answer to the alternative writ, the city and county asserted that alley "U," together with the other alleys in the tract, was made and intended to be used solely for utility purposes and that alley "U" had been continuously used for such purposes and that at the time of the purchase of this property the purchaser knew or should have known from the physical conditions existing on the alley that the same was not for automobile traffic. It further averred that alley "U" had never been and was not then opened by the city and county for public road purposes.

From such of the facts as bear upon the relations between the original owners of Kalakaua Acres and the original purchaser of lot 135 and the assigns of the latter, it clearly appears that there was created by the original owners, by implication, an easement appurtenant to lot 135 of ingress and egress by automobiles and otherwise to and from Kuhio Avenue over and along alley "U."

The subdivision of Kalakaua Acres was obviously effected by the owners for the purpose of the sale of lots for residential purposes into which the tract had been divided. It is equally obvious that when a large area of land is divided into lots for purposes of sale provision must be made, when none exists, for access to and from the lots of the tract and the existing public street system. It was undoubtedly for that purpose, at least, that in laying out the subdivision the owners reserved from sale strips of land for streets and alleys. We say "at least" deeming it unnecessary to decide under the issues here presented whether the owners of the tract intended that the streets and alleys reserved from sale should be used for purposes other or in addition to access to the existing public street system.

The presence of the words "streets" and "alleys" upon a map or plan of a subdivision of land made for the pur-

pose of selling lots therein implies that the areas indicated by those terms are reserved from sale and dedicated by the owners of the tract to the reasonable use of abutting lot owners to the extent that the use of the streets and alleys thus reserved is usual and customary under like conditions and circumstances. Hence it is that where a tract of land is subdivided by the owners into blocks and lots, and streets and alleys which connect with an existing public street system are reserved by them from sale, it is reasonable to assume that the streets and alleys thus reserved were intended by the owners of the tract for the use of abutting lot owners to the extent that the use of streets and alleys is usual and customary under like conditions and circumstances. An alley located as is alley "U" makes possible access to the rear of lots abutting thereon. It also admits of the erection of garages in the rear and in addition to the aesthetic advantages obtained eliminates both the cost and the area necessary for the construction of separate driveways by each lot owner. The number of automobiles privately owned and their use are such that provision for alleys bisecting blocks so that the rear of lots in the block abuts upon the alleys is an important consideration influencing prospective purchasers. Further, the presence of an alley so situated and its utilization by abutting lot owners as suggested not alone redound to the benefit of lot owners abutting upon the alley but avoid both the presence and necessity of drop curbs for each individual driveway. The owners of Kalakaua Acres in subdividing the tract as they did undoubtedly had these considerations in mind and intended that the alleys provided, including alley "U," be used by abutting lot owners as rights of way for automobiles to and from garages built in the rear of their premises and the streets with which they connect.

Not alone, however, were the intentions of the owners of the future use of alley "U" manifested by the subdivision

map prepared and filed by them in the land court, but also by their subsequent acts and conduct in respect thereto. Under the provisions of section 2346, R. L. 1935, provision is made that any road, alley, etc., laid out, constructed, opened or maintained by individuals or corporations as a highway may become a public highway by dedication, abandonment or surrender thereof to general use by such individuals or corporations. The conveyance of alley "U" by the Bishop Trust Company, Limited, to the City and County of Honolulu was apparently made to secure the ultimate incorporation of the alley in the public street system. One of the steps necessary, under the provisions of section 2350, to secure the incorporation of an alley in the existing public street system of the city, is a deed of conveyance thereof executed and delivered in favor of the government and accepted by it. It is true that no application had been made by the grantor, pursuant to the provisions of section 2348, to have alley "U" incorporated in the street system of the city and county nor had alley "U" been laid out, constructed and finished in accordance with plans approved by the board of supervisors as required by section 2350. But the statutes do not prescribe any order of procedure and it is immaterial that the execution of the deed preceded construction and finishing of alley "U" in accordance with plans approved by the board of supervisors. The deed from the Bishop Trust Company, Limited, to the City and County of Honolulu expressly provided that the property conveyed, including alley "U," was for "road purposes only."

It is well-settled that where the owner of a tract lays out streets upon a map not for purposes of description or location but for the purposes of establishing private streets and sells the subdivided lots with reference to such map, he thereby creates by implication a private easement in favor of lot owners upon the streets thus declared to be for

their use. (19 C. J., T. Easements, § 102, p. 913, § 127, p. 928; 4 McQuillan, Municipal Corp. [2d ed.], § 1702, p. 548; *Matter of City of N. Y.,* 258 N. Y. 136, 147, 148; *Dalton* v. *Levy,* 258 N. Y. 161, 165.) The analogy is complete where the owner also lays out alleys bisecting blocks and sells the subdivided lots with reference to such map. He thereby creates by implication a private easement in favor of lot owners to the alleys upon which the lots abut. The extent of the use is a matter of intention. Where, as here, according to the undisputed evidence, the owners of a tract of land, in whom the title in fee simple is registered in the land court, for the purposes of sale, apply to the land court for a subdivision of said tract and, in support of such application, file in the office of the registrar of the land court a map or plan delineating a subdivision of the tract into blocks and lots with reservations of streets and alleys intersecting the tract and such application is duly granted and the map or plan of the subdivision approved; and thereafter the owners convey to the City and County of Honolulu, for road purposes only, certain streets in the tract theretofore paved by the owners, including an unpaved alley bisecting one of the blocks in the tract and connecting with one of the streets conveyed and with the existing street system of the city; and the streets thus conveyed are accepted by the board of supervisors of the city and county as public streets; and lots abutting upon said alley are sold by the owners of the tract to third parties, including the petitioners' mesne assignor, with reference to the map or plan of the subdivision as on file in the land court; the evidence is sufficient to sustain the conclusion that the owners of the tract in so doing intended that the lot owners abutting upon the alley should possess and enjoy the right and privilege, in the nature of an easement by automobiles and otherwise, of ingress and egress over and along such alley to and from the streets with

which the same was connected. (*Gerstley* v. *Globe Wer-nicke Co.,* 340 Ill. 270, 172 N. E. 829, 833; *Trustees of Schools* v. *Dassow,* 321 Ill. 346, 151 N. E. 896, 899.)

In the case of an easement thus created the rule of implied grant is predicated upon estoppel. As against a grantee or grantees the owner, under such circumstances, is estopped to assert title to the alley and the grantee or grantees have a right to require the grantor to keep such alley open for the use for which it was intended. (4 McQuillan, Municipal Corp., *supra*; *Tietjen* v. *Meldrim,* 169 Ga. 678, 151 S. E. 349.)

The easement in alley "U" thus created inured to the benefit of the original purchaser of lot 135 and, in the absence of evidence to the contrary, passed to each subsequent purchaser thereof, including petitioners. Moreover, "Map No. 3," on file in the office of the land court, was part and parcel of the transfer certificate of title issued to the petitioners. Petitioners were entitled to rely upon the map and the situation as it existed in reference to alley "U" at the time of the issuance to them of the transfer certificate of title. The muniments of petitioners' title to lot 135, under the law pertaining to land registry, were the transfer certificate of title, "Map No. 3" and all the records to which it referred, including the conveyance by the original owners to the City and County of Honolulu of lot "U" for road purposes only. In the absence of evidence in derogation of an existing easement, the failure of the transfer certificate of title issued to petitioners to refer to such easement is immaterial.

Thus far we have confined ourselves to the legal effect of the sale of lands by reference to a map or plan delineating alleys upon which the land sold abuts as between the owners and a purchaser or the direct or mesne assignee of the latter and not as to the legal effect thereof as between the owner and the municipality. As originally conceived,

alley "U" was a private alley. (*City of Chicago* v. *Borden,* 190 Ill. 430, 442, 60 N. E. 915, 918.) And the easement which originally inured to the lot owners of lots abutting upon alley "U" was an easement in a private alley. Whether or not alley "U," under the facts, became a public alley is immaterial as far as petitioners' rights are concerned of ingress and egress by automobiles or otherwise to and from Kuhio Avenue. (*Danielson* v. *Sykes,* 157 Cal. 686, 109 Pac. 87.) If the petitioners are "owners" of property "abutting" the Kuhio Avenue entrance of alley "U" they are no less entitled to a permit to drop the curb on Kuhio Avenue opposite the alley than if alley "U" were a private driveway, title to which and the use of which were vested exclusively in the petitioners and the other lot owners abutting upon alley "U."

Are the petitioners as owners of the premises to which the easement is appurtenant "owners" of property "abutting" Kuhio Avenue at the intersection of the avenue and alley "U" within the meaning of those terms as used and employed in section 3 of ordinance number 201 of the City and County of Honolulu?

The word "owner" has no definite legal meaning. It is a general term "the precise meaning of which depends upon the nature of the subject-matter and the connection in which it is used." *Magoon* v. *Lord-Young Engineering Co.,* 22 Haw. 327, 338. (See also *Lewers & Cooke, Ltd.,* v. *Wong Wong,* 22 Haw. 765.)

"As applied to real property, the term 'owner' is descriptive of various rights to, and interests in, land; and the meaning of the term varies as titles and rights to real property vary, from the absolute and unqualified fee simple to that of the mere occupant." 50 C. J., T. Property, § 49, p. 772.

The word "owner" as applied to land usually refers to the person in whom is vested the fee simple title. But it

has no fixed meaning applicable to all circumstances alike. (*Coombs* v. *The People,* 198 Ill. 586.) "Owner" may refer to the owner of the fee or one of a lesser estate. (*Good* v. *Jarrard,* 76 S. E. [S. C.] 698, 701.) The word "owner" is not infrequently used to describe one who has dominion of land, title to which is in another. (*Robinson* v. *The State,* 7 Ala. App. 172, 62 So. 303, 306; *Lockhart* v. *The State,* 6 Ala. App. 61, 60 So. 591.) Where the term is used without restriction, it includes both general and special rights in property. (*The People* v. *Village of Lombard,* 319 Ill. 56, 149 N. E. 584.) In construing statutes involving the term, courts are usually guided by the context and the objects sought to be accomplished. (*Merrill R. & L. Co.* v. *Merrill,* 119 Wis. 249, 96 N. W. 686, 687.)

Ordinance number 201 is entitled "An ordinance relating to the construction, repair and renewal of sidewalks and/or curbs in the City and County of Honolulu" etc. Section 1 provides that all sidewalks and/or curbs to be constructed, repaired or renewed should conform to grades established by the board of supervisors and to such regulations as in the ordinance set forth and should be built according to the specifications therein provided. Section 2 makes it unlawful for any person, firm or corporation to repair or renew any sidewalk and/or curb in any public place in the city and county without first obtaining a permit in writing so to do from the city and county engineer. Section 3 provides the procedure upon the initiative of an owner or abutting property owner. It provides: "When the owner of the abutting property desires to construct, repair or renew sidewalks and/or curbs, he shall make written application for permission so to do to the City and County Engineer. The application shall be in such form and shall contain such information as shall be prescribed by the said Engineer. The City and County Engineer, if the official grade has been established or if

not when it has been established, shall issue a permit to do the work specified in the application and he shall state in said permit the types, width and position of sidewalk required, and shall specify such appurtenant work as he may deem necessary. The permit shall be in a form to be prescribed by the Engineer. Whenever any person, firm or corporation has completed any sidewalk or curb work for which a permit has been issued (except of less than thirty [30] lineal feet of curb, or less than one hundred [100] square feet of sidewalk), they shall so notify the City and County Engineer in writing. The City and County Engineer upon receipt of this notice, shall inspect the same and if it conforms to the specifications of this ordinance he shall give the property owner a certificate of approval. The City and County Engineer shall keep a complete record of applications and permits, grades furnished and certificates given." Sections 4 and 5 describe the method of procedure where the board of supervisors takes the initiative in the construction, renewal or repair of sidewalks and/or curbs. Section 4 provides that the resolution to be adopted for that purpose shall specifically state the kind of construction to be required and contain a provision requiring the "owner or owners of land abutting on the public highway * * * to construct, renew or repair sidewalks and/or curbs as provided herewith." Section 5 provides the procedure to be followed where an "owner," after receiving notice to construct, maintain or repair a sidewalk, or a corporation neglects or refuses to comply with such direction.

In the use, in section 3 of the ordinance, of the term "owners of abutting property" in connection with the construction, repair or renewal of sidewalks or curbs, the ordinance apparently refers to those upon whom the burden of the construction, repair and renewal of sidewalks or curbs may by reason of ownership be legally imposed.

The authority of municipalities to impose upon abutting property owners the duty at their own cost to construct, repair and renew sidewalks and curbs is well-recognized. By the ordinance in question such power is conferred upon the board of supervisors of the City and County of Honolulu. Considering the subject matter and purpose of the ordinance, in our opinion, the term "owner of abutting property," as employed in section 3 of the ordinance, is broad enough to include the petitioners as the owners of lot 135 to which is appurtenant the easement of ingress and egress over and along alley "U" by vehicles and otherwise to and from Kuhio Avenue. The petitioners, in common with the other abutting property owners on alley "U," are legally in the same position as though the alley were part and parcel of their premises and constituted a common driveway for all. In the case of *Phillips* v. *Highway Commissioner of China,* 35 Mich. 15, 16, review was requested of proceedings for the discontinuance of a piece of a public highway access to which was secured to the realtor by a private way from property owned by him in the rear. The court said: "For the purpose of the proceeding to discontinue, the narrow strip of private way is an addition to the parcel lying back. His [the realtor's] right does not depend on the width or use of his holding connected with the public highway, but on the fact of his having a holding connected with it." In the case of *Beutel* v. *West Bay City Sugar Co.,* 132 Mich. 587, 94 N. W. 202, the ruling in the *Phillips* case was affirmed, the court saying: "It is also undoubtedly true that, where one has a private right of way connecting his premises with the public way, he may be held to be an abutter on the street by means of the private right of way, and in such case a discontinuance of the public way would work him a peculiar injury."

The petitioners, in common with the other lot owners abutting upon alley "U," were co-owners of alley "U" as the

term "owners" is used in section 3 of the ordinance. Alley "U" physically abuts upon Kuhio Avenue. Hence in respect to alley "U" the petitioners, in common with the other lot owners abutting upon alley "U," were "owners of abutting property" as that term is used in section 3 of the ordinance. And, as such, petitioners were entitled to a permit to lower the existing curb on Kuhio Avenue opposite alley "U" so long as in doing so they did not interfere with the use by the public of Kuhio Avenue and conformed with all reasonable conditions imposed upon them by the city and county engineer consistent with the terms of the ordinance. (*Tire Co.* v. *Com'r Parks, etc., Detroit,* 163 Mich. 249, 128 N. W. 410; *Metropolitan District Commission* v. *Cataldo,* 257 Mass. 38, 42, 153 N. E. 328.)

It is difficult to understand why a permit to lower the curb on Ala Wai Boulevard at the instance of the owners of lots 121 and 122 was granted by the city and county engineer and a similar permit refused as to Kuhio Avenue. It may be the policy of the city and county to refuse to incorporate alleys such as alley "U" in the public street system and thus avoid the responsibility of their maintenance and repair. With that policy we have no concern. But as between the owners of the tract and the petitioners or their predecessors in interest, it is not within the prerogative of the city and county to determine whether or not a private way exists. Moreover, no basis exists for the claim that alley "U" was intended to be used solely for utility purposes. There is no evidence even remotely suggesting such intention. From what has been said it is clear that alley "U" was intended primarily to be used as a right of way. Nor is it material that it has been used for utility purposes. We do not presume to say that the reservation from sale of alley "U" was exclusively for traffic. Whether it was reserved also for utility purposes, however, is beside the question. The scope of review herein does not include

the question whether or not reservation of alley "U" was for purposes other and in addition to the right of ingress or egress by vehicles or otherwise to and from Kuhio Avenue. Further, appearances on the ground are not controlling. It does not appear that by nonuser the petitioners have relinquished or forfeited the rights reserved to them.

Pursuant to the views herein expressed, the order appealed from is reversed and the cause remanded with instructions to the trial judge to make the alternative writ permanent.

*G. D. Crozier* (also on the briefs) for petitioners.

*W. C. Tsukiyama,* City and County Attorney (also on the brief), for respondent.