*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT KANAS and LISA PURDY-KANAS,

      Plaintiffs/Counterdefendants-
      Appellants,

UNPUBLISHED
September 10, 2025
10:41 AM

v

No. 369445
Oakland Circuit Court
LC No. 2020-183262-CH

DUANE TRAVIS and KIMBERLY TRAVIS,

      Defendants/Counterplaintiffs-
      Appellees.

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs, Robert Kanas (Bob) and Lisa Purdy-Kanas (Lisa), appeal as of right the final judgment of the trial court following a three-day bench trial. Plaintiffs challenge the trial court's determination that under the doctrines of adverse possession and acquiescence, defendants, Duane Travis (Duane) and Kimberly Travis (Kimberly), were the lawful owners of a disputed 4.83 square foot triangle-shaped area between the two properties (the disputed triangle). They also challenge the court's dismissal of their trespass and nuisance per se claims, the decision to grant judgment in defendants' favor on their counterclaim for trespass, and entry of a no-cause judgment on the parties' remaining claims. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

This case involves defendants' installation of a concrete driveway, which plaintiffs argue encroached on their property, crossed over about 40% of their property frontage, and went into the public road. Plaintiffs own lakefront property on Cantley Road, in Addison Township, which they purchased in June 1992. Defendants own an adjacent property, which they purchased in 2000. Both properties are in a recorded plat, with plaintiffs' property designated as Lot 16 and defendants' property designated as Lot 15. Cantley Road is an unpaved, publicly dedicated right of way. In 1983, the Oakland County Road Commission (the Road Commission) "vacated and abandoned" part of Cantley Road. The vacated portion of Cantley Road returned to plaintiffs'

-1-

property and included the area of the disputed triangle. It is undisputed that a dirt access point from defendants' property to Cantley Road existed before they moved into their home.

A 1994 survey of plaintiffs' property did not reveal an encroachment on plaintiffs' land. Defendants obtained a mortgage survey when they purchased their home in 2000. The mortgage survey showed an area labeled "gravel drive" which did not extend beyond defendants' property line. The survey indicated that the access point to defendants' property was part of Cantley Road. In 2004, defendants installed a concrete parking pad in front of their garage and placed gravel on the rest of the driveway. The gravel went all the way up to the improved portion of Cantley Road, which the Road Commission maintained. Historically, the area between the parties' properties near the disputed triangle included an island of landscaping.

Duane testified that the disputed triangle was part of the walkway that he and his family used. Duane took care of a box elder and other foliage on the south side of the island. According to Duane, Bob repeatedly asked him to remove the box elder. The box elder was removed when defendants installed their concrete driveway. Bob maintained the area on the north side of the trees, which faced his property. Both parties purchased decorative arborvitae trees for the landscaped area. Duane installed low-voltage lighting to shine on the arborvitae trees. He testified that he had "always maintained the top of that hill." For his part, Bob testified that he would "periodically maintain" the entire island, including by trimming the trees.

In 2014, defendants installed a concrete driveway while plaintiffs were living in another state. Duane informed Bob that he intended to install a concrete driveway, but he did not ask for permission to do so. Although he widened the driveway by about 4 feet, Duane did not realize that the driveway encroached on plaintiffs' property or into Cantley Road. According to Duane, he told Bob that he planned to remove the box elder. Plaintiffs dispute that defendants told them about the driveway construction. Regardless, it is undisputed that the concrete driveway is 6 inches thick, extends about 20 feet into the Cantley Road right-of way, and that the disputed triangle is on property deeded to plaintiffs. In 2018, defendants retroactively obtained a Road Commission permit for the driveway "as constructed."

Plaintiffs moved back to Michigan in late 2014. They did not realize that the new driveway encroached on their property until they obtained a new survey in 2019 in connection with improvements that they intended to make to a dry well on their property. Plaintiffs' surveyor, George Reichert, testified that it was not unusual for a residential driveway in Oakland County to extend into the right-of-way. After learning about the encroachment, Bob asked Duane to take out the concrete driveway. Duane refused. The Road Commission was involved in the dispute between the parties, but encouraged them to resolve it themselves. Scott Sintkowski, a permit engineer with the Road Commission, testified that property holders should generally construct their driveway on their own property frontage, but he added that there are exceptions to that general rule. He noted that the driveway did not meet all the requirements of the 2018 driveway permit, but stated that the Road Commission was not raising any issues with the driveway because it did not interfere with its ability to maintain Cantley Road. He further opined that defendants' driveway necessarily had to extend into the public portion of the right-of-way in order for defendants to reach Cantley Road. He opined that the defendants' driveway did not interfere with plaintiffs' "reasonable and convenient access" to Cantley Road. Sintkowski acknowledged that defendants' driveway would need to be in the public portion of the right-of-way to reach Cantley Road.

Additionally, Jon Hunter, who owns the property on the other side of defendants' house, testified that, in the 1990s, he used the unpaved portion of defendants' driveway to access his own lot. Hunter stated that the previous driveway existed in essentially the same place where defendants constructed the concrete driveway.

The parties were unable to resolve the issue, and plaintiffs filed a complaint against defendants, raising a number of claims. Defendants filed an answer, affirmative defenses, and counterclaim, pleading a number of issues and defenses. As relevant to this appeal, they alleged that plaintiffs trespassed on their property when constructing a new dry well in July 2019. At trial, plaintiffs denied that any trespass occurred. But according to Duane, Lisa shoveled a trench and removed a silt fence that defendants previously placed near the property line. Further, Thomas Maliszewski, a construction contractor who is also Kimberly's father, testified that he saw that Bob created an embankment that encroached on defendants' property. He explained that Bob was installing the new dry well on his own property, but that he excavated part of defendants' property in the process.

Following a trial, the court issued a written opinion and order holding that defendants did not unlawfully interfere with plaintiffs' rights to Cantley Road, quieting title to the disputed triangle to defendants under the theories of adverse possession and acquiescence, finding in defendants' favor on their trespass claim, and dismissing plaintiffs' nuisance per se claim and all remaining claims. This appeal follows.

## II. INTERFERENCE WITH PROPERTY RIGHTS

### A. STANDARD OF REVIEW

Plaintiffs first argue that the trial court erred by failing to recognize that defendants' driveway encroached on their rights to Cantley Road. They contend that the trial court erred by examining the degree of the burden that the driveway placed on plaintiffs instead of simply examining whether an encroachment existed at all. A trial court's factual findings following a bench trial are reviewed for clear error, but its legal conclusions are reviewed de novo. *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). A clear error occurs when this Court is left with a definite and firm conviction that a mistake was made. *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

### B. ANALYSIS

We first consider whether defendants' driveway unlawfully interferes with plaintiffs' rights in relation to Cantley Road, which was designated a public right-of-way. As relevant to that issue, MCL 560.253(2) provides that when a plat is certified upon dedication, "[t]he land intended for the streets . . . or other public uses as designated on the plat shall be held by the municipality in which the plat is situated in trust to and for such uses and purposes." "A 'dedication' of land is an appropriation of land to some public use, accepted for such use by or in behalf of the public." *2000 Baum Family Trust v Babel*, 488 Mich 136, 144; 793 NW2d 633 (2010) (quotation marks and citation omitted). The idea is that the land covered by the dedication will be used by the public at large. *Id.* Further, "the owner of property abutting upon a street," has the following property rights to the street: (1) the right to use the street as a member of the general public, (2) a reversionary

ownership interest[1] to the center of the public street, and (3) a right to ingress and egress to and from the street as owner of a lot that abuts the street. *Id*. at 152.

The "right of access" that an abutting landowner has "includes a right of access to his or her own property." *Id*. at 157. It is considered to be a " 'private right' that flows from a deed that refers to a plat, and is distinct from the public's rights in the road." *Id*. The right of access adds value to the land. *Id*. When examining the rights of a landowner to the adjacent public street, the language used in the dedication of the plat can be "significant, indeed controlling." *Id*. at 159.

In contrast, this Court has recognized that local governments have the authority to exercise reasonable control over their highways and streets. *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013). Defendants do not contend that they own or adversely possess the public road. Instead, they rely on the principle that a property owner has a right to reasonable and convenient access to his property from a public highway, which does not necessarily mean unfettered access at all points. *Id*. at 17. Thus, this issue is governed by the driveways, banners, and parades act (the driveway act), MCL 247.321 *et seq*., which allows municipalities to grant driveway permits and emphasizes the right to reasonable access to the highway. MCL 247.324. See also *Goodfellow Tire Co v Comm'r of Parks & Boulevards of City of Detroit*, 163 Mich 249, 255; 128 NW 410 (1910).

"Nothing in the [driveway act] requires the person seeking the permit to own the property adjoining the highway over which that person seeks to construct a driveway." *Smith v Edwards*, 249 Mich App 199, 208; 645 NW2d 304 (2002). In *Smith*, the principal defendant's construction of a driveway overlapped with the plaintiffs' easement on the property in question. *Id*. at 201. The *Smith* Court affirmed the trial court's grant of summary disposition because the plaintiffs failed to present evidence that the installation of the driveway would interfere with their property rights as they could still use their easement for access to and from their house and in relation to public utilities. *Id*. at 209-211.

The two property rights plaintiffs invoke are (1) the reversionary interest to the center of the public street, and (2) the right to access their home from the street. The central issue is whether these rights supersede defendants' right to reasonable and convenient access to their property from the public road. As it relates to plaintiffs' right to access their property from the public road, plaintiffs do not cite any law that grants them a complete right of access to Cantley Road along their entire frontage without any exception. Rather, as noted earlier, there is a right to access the road—not a right to a completely unobstructed frontage. See *Baum Family Trust*, 488 Mich at 152.

There is no dispute that plaintiffs have an unobstructed access point to Cantley Road through their own driveway. Sintkowski, who served as a representative of the Road Commission, explained that the Road Commission's "main concern with a driveway crossing onto another frontage" was whether it would interfere with the frontage owner's "reasonable and convenient access" to the road. He opined that defendants' concrete driveway interfered with plaintiffs' "reasonable and convenient access" to the road. He also acknowledged that defendants' driveway

---

[1] A reversionary interest is a future interest in the property. *Ditmore v Michalik*, 244 Mich App 569, 580; 625 NW2d 462 (2001).

would need to be in the public portion of the right-of-way to reach Cantley Road. Thus, if the driveway were removed, defendants would be left without access to their property at all. So like the situation in *Smith*, there was no evidence that the driveway interfered with plaintiffs' rights to access the public road, considering that plaintiffs had access to the road and could not expand on that access by building a second (or circular) driveway on their property. Therefore, the trial court did not err by concluding that the driveway did not interfere with plaintiffs' right to access the street.

Plaintiffs next argue that the trial court's ruling ignores the fact that they have a reversionary interest in the walkway from their property to the center of the street, which they assert is approximately 40% obstructed by defendants' concrete driveway. They also point out that MCL 560.253(2) contemplates that land intended for public use should be held by the municipality in trust for that use and for no other purpose. However, plaintiffs' reversionary interest is a future interest in the property that is contingent on the Road Commission's decision to vacate the road. There is no evidence the Road Commission has any intention of doing so. Additionally, there is no evidence that would support plaintiffs' theory that the slight encroachment on Cantley Road changes the overall use or character of the street for purposes of MCL 560.253(2).

The trial court found that there was no dispute that the dirt access point was always the area where the driveway for Lot 15 connected with Cantley Road. The court further found that the access point encroached on Cantley Road even before defendants paved their driveway, meaning that removal of the concrete driveway would not remedy the issue. The court's findings are not clearly erroneous. First, Hunter, who lived on the street for 30 years, testified that an unpaved driveway existed in essentially the same place as the concrete driveway. As far back as the 1990s, he personally used the unpaved portion of the access point to access his own lot. Second, Reichert testified at trial that it was not unusual for a residential driveway in Oakland County to extend into the public right-of-way to connect with the street. Third and finally, the photographic evidence admitted at trial supports that the encroachment is minimal, was present even before defendants paved their driveway, and does not block completely the right-of-way.

Moreover, there was evidence that defendants' need to access the road from the preexisting access point was not only reasonable and convenient, but was also a common practice and was necessary so that defendants could reach their home from the street. Sintkowski explained that while there were aspects of the concrete driveway that did not conform with the 2018 permit, the Road Commission was not raising any issues with the driveway because it did not interfere with its ability to maintain the road. He noted that the nonstandard aspects of the driveway were "not uncommon particularly . . . in lake communities." Indeed, there was evidence that plaintiffs' own driveway encroached on the Cantley Road right-of-way. Sintkowski also confirmed that defendants' driveway would need to be in the public right-of-way to reach Cantley Road. Hunter stated that defendants could not relocate their driveway because it would be uphill and would run into Hunter's own driveway. Considering these facts, the trial court did not err by concluding that the driveway was necessary to allow defendants reasonable access to their property from the public road. To the extent that the driveway interfered with plaintiffs' reversionary interest to the center of the road, the court did not err by finding that this interest was outweighed by defendants'

competing interest in reasonable access to their property.[2]  Under these circumstances, the trial court did not err by examining the competing burdens on the parties and ruling that the driveway did not interfere unlawfully with plaintiffs' access to Cantley Road or other property rights.

## III.  QUIET TITLE

### A.  STANDARD OF REVIEW

Plaintiffs next assert that the trial court erred by quieting title to the disputed triangle in defendants' favor under the doctrines of adverse possession and acquiescence.  Claims to quiet title are equitable claims that we review de novo.  *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004).

### B.  ANALYSIS

The purpose of a quiet-title action is to determine which party has a superior interest in the real property in question and remove any cloud from the title.  *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138; 863 NW2d 344 (2014).  The party asking the court to quiet title to the property must establish a prima facie case of title to the property, and if that party does so, then the burden shifts to the opponent to prove a superior right or title to the property in question.  *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

### 1.  ADVERSE POSSESSION

Plaintiffs assert that the trial court erred by finding that defendants adversely possessed the disputed triangle.[3]  In *Houston v Mint Group, LLC*, 335 Mich App 545, 558; 968 NW2d 9 (2021), this Court stated:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years.  These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired.  To claim by adverse

---

[2] Plaintiffs rely on *Longton v Stedman*, 182 Mich 405, 407-408, 410; 148 NW 738 (1914), which addressed a dispute over an easement on a strip of property between two neighboring landowners.  However, *Longton* did not involve a public right-of-way or the rights of an abutting property owner that were outlined in *Baum Family Trust*.  Plaintiffs also rely on *Schadewald v Brule*, 225 Mich App 26; 570 NW2d 788 (1997), and *Soergel v Preston*, 141 Mich App 585; 367 NW2d 366 (1985).  However, *Soergel* and *Schadewald* are also distinguishable because they did not involve a competing interest in accessing a public road.  In this case, because there were competing interests at stake, the trial court did not err by weighing those interests.

[3] Plaintiffs also contend that the trial court erred by finding that defendants adversely possessed Cantley Road.  However, the trial court's ruling on adverse possession and acquiescence was limited to the disputed triangle.  Therefore, we decline to address this issue further.

possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [Quotation marks and citation omitted.]

See also MCL 600.5801. In general, an action to recover or possess land must be brought within 15 years after the claim accrues. MCL 600.5801(4). The "clear and cogent proof" standard requires more than a preponderance of the evidence and is closer to the level of proof beyond a reasonable doubt. *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997) (*Walters I*). "The evidence offered in support of adverse possession must be strictly construed with every presumption being exercised in favor of the record owner of the land." *Rozmarek v Plamondon*, 419 Mich 287, 292; 351 NW2d 558 (1984) (quotation marks and citation omitted). The defendant's possession of the land must be "hostile and under cover of a claim of right." *McQueen v Black*, 168 Mich App 641, 643; 425 NW2d 203 (1988). (quotation marks and citation omitted). "[T]o establish adverse possession, the true owner must have actual knowledge of the adverse possession, or alternatively, the possession must be so notorious as to raise the presumption to the world that the possessor claims ownership." *Rozmarek*, 419 Mich at 293 (quotation marks and citation omitted).

Defendants widened their driveway by about 4 feet when they installed their concrete driveway in 2014. However, Duane testified that they used the disputed triangle as a walkway starting when they moved into their home in the early 2000s, which exceeds the 15-year statutory period.[4] He explained in detail that he and his family used the area in question exclusively as a walkway and that the area of the disputed triangle was next to the side of an island of greenery that he tended. The triangle was on defendants' side of an island where a box elder was planted and where the parties planted other greenery over the years. Duane did not ask plaintiffs' permission to install the driveway because he believed the area was his property. But he informed them that he was going to install a concrete driveway and remove the box elder. He testified that plaintiffs did not raise an issue about either proposal. Indeed, Bob acknowledged that he did not raise the issue of defendants' paving over the disputed triangle until July 2019.[5] There was nothing discreet or hidden about the area or how defendants used the disputed triangle. Thus, for about 20 years, defendants openly used the area in question as their own personal walkway in full view of plaintiffs and the rest of the world, establishing that their use was actual, visible, and open.

To refute Duane's testimony, plaintiffs maintain that a walkway could not have existed because the area consisted of greenery, and that even if there was a walkway, it did not lead anywhere. But plaintiffs overlook Duane's testimony that his family would use the area to get from the driveway to the lake. And the fact that, at some point in time, the area may have been

---

[4] Plaintiffs obtained a land survey in 1994, but the 1994 survey did not incorporate defendants' driveway (or any of Lot 15). Consequently, the survey does not provide insight into whether the defendants' gravel driveway included the disputed triangle.

[5] There is no evidence Lisa ever challenged the installation of the driveway before July 2019.

grass instead of gravel does not necessarily mean it was not used as a walkway. Even assuming for the sake of argument that the disputed triangle did intersect the island of greenery, the evidence supported that Duane tended the area in question, which the parties considered to be defendants' property. Additionally, defendants presented numerous photographs at trial that showed the area of the walkway, which was near the box elder and defendants' side of the island. The photographs show that the area of the disputed triangle was part of the gravel driveway on defendants' side of the greenery. The photographs therefore support Duane's testimony that he and his family treated the area as their own and used the area as a walkway.

Duane's detailed testimony and the photographs also supported that defendants' use of the disputed triangle was continuous, exclusive, and uninterrupted throughout the statutory period, and that plaintiffs either had actual knowledge or the adverse possession was so notorious that plaintiffs could be deemed to have knowledge of it. There was no evidence that the disputed triangle changed hands or that it was used for anything other than defendants' personal walkway or driveway during the 15-year period. Although Bob testified that he cared for the greenery in the island, Bob did not explain if or how his family used the walkway. Bob's testimony that he would maintain the greenery and trim trees near the disputed triangle, at most, created a question of fact on whether defendants' use was continuous and exclusive. When comparing Bob's vague testimony about how he used the disputed triangle with Duane's detailed testimony and numerous photographs showing a continuous, exclusive, and notorious use, the trial court did not clearly err by finding that defendants' possession of the disputed triangle continuous, exclusive, and notorious for the statutory period.

Finally, "[t]he term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston*, 335 Mich App at 559 (quotation marks and citation omitted). And "a party who does believe that the boundary is the true line is as entitled to claim adverse possession as the party who does not have that belief." *Id*. at 563. Here, defendants did not ask plaintiffs' permission at any point in time to use the disputed triangle or to build over it. Although it appears the parties were mistaken about the boundary, the element of hostility did not require that defendants harbor any ill-will against plaintiffs. All that was required was that they held to the boundary line in which the disputed triangle was on their property for approximately 20 years. The trial court credited Duane's testimony, which supported that plaintiffs could have sued defendants at any relevant point based upon their continuous use of the disputed triangle as a walkway. There is no indication in the record that defendants ever recognized that plaintiffs were the rightful owners of the property. Therefore, the hostility element was met by clear and cogent proof.

Next, plaintiffs complain that defendants presented no expert testimony, measurements, calculations, or surveys to support their position that the disputed triangle was used as a walkway before the concrete driveway was installed. However, plaintiffs cite no legal basis for their assertion that this evidence is required in an adverse-possession context. It is also unclear how surveys and measurements would assist defendants' position. Surveys and measurements would not be particularly helpful to resolving the issue whether the area was a walkway given that there is no dispute about where the disputed triangle is located. Nor do plaintiffs explain how expert testimony would be helpful to determining how the parties used the property in question before it

became a concrete driveway. For these reasons, the lack of surveys, measurements, or expert testimony was not dispositive.

In sum, based upon the foregoing, we conclude that defendants presented clear and cogent proof that their use of the area of the disputed triangle was actual, visible, continuous, hostile, exclusive, notorious, and open from the time they moved into their home in 2000 until plaintiffs' lawsuit was filed in 2020. The trial court, therefore, did not err by ruling in their favor on their adverse possession claim.

## 2. ACQUIESCENCE

Plaintiffs next contend that the trial court erred by finding that defendants acquired title to the disputed triangle by acquiescence. Acquiescence may be based on one of three legal theories: "(1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary." *Walters v Snyder*, 239 Mich App 453, 457; 608 NW2d 97 (2000) (*Walters II*). For a claim of acquiescence for the statutory period, MCL 600.5801(4) requires a showing that the parties acquiesced in the property line and treated it as the boundary for the 15-year statutory period, regardless of whether there existed a bona fide controversy about the boundary. *Walters II*, 239 Mich App at 456. "A claim of acquiescence does not require that the possession be hostile or without permission." *Id*. (quotation marks and citation omitted). Rather,

> [t]he law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is. Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land. [*Sackett v Atyeo*, 217 Mich App 676, 681-682; 552 NW2d 536 (1996) (quotation marks and citation omitted).]

Acquiescence need only be proved by a preponderance of the evidence. *Walters II*, 239 Mich App at 455.

Plaintiffs argue there was no acquiescence because (1) there was no walkway near the disputed triangle before defendants installed their concrete driveway, (2) Bob cared for the island, (3) there was no evidence that Lisa acquiesced to a property line favoring defendants in relation to the disputed triangle and (4) acquiescence traditionally applies when there is a fenced boundary. We address each argument in turn.

First, there was sufficient evidence supporting defendants' position that, through their conduct, the parties implied a boundary line in which defendants were the owners of the disputed

triangle, which was used as a walkway and was near greenery that defendants would tend. Again, Duane testified that plaintiffs did not take issue with the concrete driveway until about five years after it was installed. He also testified that Bob routinely asked him to remove the box elder that was near the disputed triangle. Based on Duane's testimony, the implied boundary line existed for more than 15 years.

Next, Bob testified that he would "periodically maintain" the island, including by trimming the trees. However, it was the role of the trial court to resolve any conflicting testimony on this issue. See *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008). The parties' testimony on this issue was not necessarily conflicting. Duane testified that he took care of the box elder and other greenery on his side of the island. Bob, meanwhile, maintained the area on the north side of the trees, which faced his property. To the extent that their testimony conflicts, the trial court did not clearly err by crediting Duane's testimony over Bob's testimony.

Finally, as it relates to Lisa, the only evidence presented in this case was that she shared the same position as Bob as it related to the disputed triangle and that she also did not complain about the concrete driveway until July 2019. Duane testified that in July 2019, Lisa told Kimberly, "You're pathetic and we're going to make you take out your driveway." He testified this was the first time defendants heard any issue from either plaintiff about the concrete driveway. Plaintiffs did not present any evidence indicating that Lisa's position on the issue of the boundary was different in any respect from Bob's position. Nor do they cite any legal authority to support that the boundary line at issue in an acquiescence claim must be a fence. Rather, although the issue "typically" arises in situations involving fences, a fence is not necessary. See *Sackett*, 217 Mich App at 681. For these reasons, defendants established through a preponderance of the evidence that the parties acquiesced to a boundary line in which defendants were the owners of the disputed triangle. Therefore, the court did not err by quieting title to the disputed triangle in defendants' favor on the basis of acquiescence for the statutory period.

## IV. NUISANCE PER SE

Plaintiffs next argue that the trial court erred by failing to assess plaintiffs' nuisance per se claim, which was Count III of their complaint, and by failing to find that defendants committed a nuisance per se by constructing their driveway into the Cantley Road right-of-way. When ruling on the issues raised during the bench trial, the trial court recognized that plaintiffs were raising nuisance claims. The court went on to address plaintiffs' different factual theories, but did not address the statutes mentioned in the posttrial briefing. The court's failure to address the statutes appears to have been an oversight. Nevertheless, it can be reasonably inferred from the court's mention of the nuisance claims and later dismissal of all remaining claims that the court dismissed plaintiffs' nuisance per se claims. Because our review is de novo, we will review the merits of the claim. See *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009).

A nuisance per se "is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 269 n 4; 761 NW2d 761 (2008) (quotation marks and citation). A party may bring a nuisance-abatement proceeding in the trial court. *Id*. at 270. Plaintiffs rely on MCL 230.4 to support that the driveway expansion into the Cantley Road right-of-way constituted a nuisance per se. MCL 230.4 provides:

Whoever shall wilfully obstruct the navigation of any river or stream, which is now or may hereafter be declared a public highway, by felling any tree therein or by putting into any such river or stream any refuse lumber, slabs, or other waste materials, or *who shall wilfully obstruct any highway*, or fill up or place any obstructions in any ditch constructed for draining the water from any highway, or who shall injure any highway by diverting any creek, or by obstructing any water course or sluice, *shall forfeit for every such offense a sum not exceeding 25 dollars*. [Emphasis added.]

Thus, MCL 230.4 provides that the remedy for a violation of this statute is a $25 fine—not an injunction. Here, the court dismissed plaintiffs' damages claims relating to the nuisance per se issue on summary disposition, and plaintiffs do not challenge that ruling on appeal. Moreover, there is no evidence that plaintiffs obstructed Cantley Road, let alone that they did so on a willful basis. In particular, both Hunter and Maliszewski testified they travel Cantley Road on a regular basis. A photograph depicting the driveway after construction shows that the encroachment into Cantley Road is minimal. There is no evidence the driveway impedes traffic. So the driveway did not constitute a violation of MCL 230.4. And, even if it did, there is no evidence that the encroachment is a nuisance at all times and under any circumstances. Rather, Sintkowski testified that these types of encroachments are fairly common, particularly in lakefront communities, to allow access to properties. Again, defendants had a valid reason for the encroachment for reasonable access to their home. Under these circumstances, the encroachment did not constitute a nuisance per se. The trial court did not err by dismissing this claim.

## V. TRESPASS

Finally, plaintiffs argue the trial court erred by ruling in defendants' favor on their trespass counterclaim, arguing there was no evidence either plaintiff trespassed on defendants' property when constructing their new dry well in 2019.[6] Trespass is defined as "an invasion of the plaintiff's interest in the exclusive possession of his land." *Terlecki v Stewart*, 278 Mich App 644, 653-654; 754 NW2d 899 (2008) (quotation marks and citation omitted). Trespass is an intentional tort. *Id*. at 654. "[R]ecovery for trespass to land is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id*. (quotation marks and citation omitted). The intent element relates to the intent to be on the land where the trespass occurred—not the intent in causing a trespass. See *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 345; 568 NW2d 847 (1997).

Plaintiffs first argue that there was no evidence Lisa trespassed at all. Likewise, Bob denied at trial that his dry well encroached on defendants' property or that he excavated any portion of

---

[6] Defendants argue that they were entitled to treble damages under MCL 600.2919. However, this issue is not before this Court because defendants dismissed their cross-appeal. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 518; 892 NW2d 467 (2016). Additionally, because the trial court's trespass ruling related to the dry well and excavation activity, and that activity was sufficient to constitute a trespass, we decline to address the issue relating to plaintiffs' gutters and downspouts.

their property. However, the trial court was not bound to credit plaintiffs' testimony over the testimony of defendants' witnesses, who testified that both plaintiffs trespassed on defendants' property. See *Wright*, 279 Mich App at 299. Specifically, Duane testified to witnessing both Bob and Lisa excavating and moving items that were on defendants' property. Likewise, Maliszewski testified to seeing Bob creating an embankment and excavating part of defendants' property while defendants were away on a trip. Maliszewski took a photograph that showed Bob and another man near the area of excavation. Maliszewski explained that the photograph showed that Bob moved brick pavers and timber that were previously on defendants' property. As it relates to the photograph, Duane explained the timber depicted on the left of the photograph was his timber and that it had been moved. The bricks and silt fence to the left of the red pole was also moved. Duane added that Bob placed the dirt shown in the area behind defendants' driveway. Duane spoke with Bob about the issue the day after this photograph was taken, and Bob refused to remove the hill shown on the right side of the photograph. Plaintiffs maintain that Bob is on his own property in this photograph, but they overlook the testimony concerning the photograph, which indicated Bob excavated on defendants' property.

The trial court did not err by concluding that the photograph and the corresponding testimony established that both defendants committed an invasion of plaintiffs' interest in the exclusive possession of their land. See *Terlecki*, 278 Mich App at 653-654. Not only was there evidence that the excavation activity occurred, but there was testimony that both plaintiffs individually participated in the excavation activity. Moreover, even if some of the excavation activity was technically conducted by a third party, " '[i]t is a well-established principle of law that all persons who instigate, command, encourage, advise, ratify, or condone the commission of a trespass are cotrespassers and are jointly and severally liable as joint tortfeasors.' " *Wiggins v City of Burton*, 291 Mich App 532, 557; 805 NW2d 517 (2011) (citation omitted).

Lastly, plaintiffs again contend that defendants failed to present any surveys or evidence of property lines to show that Bob trespassed on defendants' property. But plaintiffs do not cite any legal basis that would require defendants to present surveys or measurements to support the testimony of witnesses familiar with the properties. Instead, this issue would go to the weight of the evidence, which the trial court discussed in detail in its opinion. See *Wright*, 279 Mich App at 299. For these reasons, the trial court did not err by finding that a trespass occurred.

Affirmed. Defendants may tax costs as the prevailing party. MCR 7.219(A).

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien